# IN THE UNITED STATES DISTRICT COURT

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta
DEC 1 1 2025
KEVIN P. WEIMER, Clerk
By: Deputy Clerk

**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**Juliette Lowe,**
Plaintiff,

v.

**Greystar Management Services, LP,**
**Somerset at the Crossings Apartments,**
Defendants.

Civil Action No.: ____________________

# COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND JURY DEMAND

---

## I. JURISDICTION AND VENUE

1. This action arises under the **Fair Housing Act**, 42 U.S.C. §§ 3601–3619, and 42 U.S.C. § 1982.
2. Jurisdiction is proper under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 42 U.S.C. § 3613(a).
3. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in this district, and the property at issue is located here.

---

## II. PARTIES

4. Plaintiff **Juliette Lowe** is a Black single woman and former tenant of Somerset at the Crossings Apartments. She is currently unhoused and residing in an extended stay hotel.
5. Defendant **Greystar Management Services, LP** is a property management company doing business in Georgia, including managing Somerset at the Crossings.
6. Defendant **Somerset at the Crossings Apartments** is a residential apartment complex located at 100 Summerwalk Parkway, Tucker, GA 30084.

## III. FACTUAL ALLEGATIONS

### A. Approved Transfer and Discriminatory Revocation

8. On July 16, 2024, Plaintiff's request to transfer from her two-bedroom unit to Unit 1402, a three-bedroom unit, was approved in writing by the then-Community Manager, Amy Berganske.
9. Plaintiff was given a detailed move-in statement with rental terms and a start date of August 18, 2024, and paid the $400 transfer fee on July 17, 2024.
10. Plaintiff selected the unit after being invited to do so by management and began preparations to relocate in reliance on this approval.
11. In August 2024, Defendant revoked the transfer, first citing a "system error" and later stating "corporate is not allowing transfers at this time."
12. During this same period, other tenants of different races and national origins including a Black couple with a white dog and an Indian couple were allowed to transfer to three-bedroom units.

### B. False Denial of Available Housing

13. On September 13, 2024, Plaintiff's attorney sent a formal demand to Defendants to honor the approved transfer.
14. Defendants' attorney responded by claiming "no three-bedroom units were available."
15. Plaintiff possesses time-stamped screenshots from Defendants' own website showing multiple three-bedroom units available that same day.
16. This constitutes a false denial of available housing in violation of 42 U.S.C. § 3604(d).

### C. Retaliation and Constructive Eviction

17. After the revocation, Defendants gave Plaintiff only Six days to renew her existing lease or face market-rate rent, in violation of 42 U.S.C. § 3617.
18. Plaintiff's rent was increased $1,000, and she was later billed $1,500 in move-out charges.
19. In December 2023, Defendants filed an eviction against Plaintiff without providing a written demand or proper service. The case was dismissed in January 2024 but remains on public record, harming Plaintiff's housing prospects.

### D. Unauthorized Entry and Property Removal

20. While Plaintiff was still in possession and paying rent, Defendants allowed vendors to enter without notice to begin renovations.
21. On November 8, 2024, management admitted in writing that this occurred before her move-out date and took "full responsibility."
22. Plaintiff's personal property was removed from her patio without consent, requiring police intervention.

**E. Ongoing Harm and Displacement**

23. As a direct and proximate result of Defendants' actions, Plaintiff has been displaced from stable housing for nearly a year.
24. Plaintiff was forced to relocate to a rat-infested apartment, lived with family temporarily, and is now residing in an extended stay hotel.
25. Plaintiff's minor daughter has had to change schools three times and live temporarily out of state.
26. Plaintiff checked into a wellness center for five weeks in May 2025 for mental health treatment and is currently unemployed after a FMLA leave for severe depression.
27. Plaintiff remains unhoused as of the date of filing.

## IV. CAUSES OF ACTION

**Count I – Denial of Housing / Making Housing Unavailable**
(42 U.S.C. § 3604(a))

**Count II – Discrimination in Terms, Conditions, or Privileges of Rental**
(42 U.S.C. § 3604(b))

**Count III – False Denial of Housing Availability**
(42 U.S.C. § 3604(d))

**Count IV – Retaliation and Interference**
(42 U.S.C. § 3617)

**Count V – Equal Property Rights Regardless of Race**
(42 U.S.C. § 1982)

**Count VI – Wrongful Eviction and Due Process Violation**
(Under federal civil rights principles and incorporated state law)

---

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:
a. Enter judgment in favor of Plaintiff and against Defendants, jointly and severally;
b. Award **compensatory damages** in the amount of **$1,200,000** for economic and non-economic losses;
c. Award **punitive damages** in the amount of **$800,000** for willful and reckless disregard of Plaintiff's federally protected rights;
d. Award reasonable attorney's fees and costs under 42 U.S.C. § 3613(c)(2);
e. Grant injunctive relief requiring Defendants to remove the false eviction record and cease discriminatory practices;
f. Award such other and further relief as this Court deems just and proper.

---

## VI. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,
Juliette Lowe, Plaintiff

# Move-in statement from Somerset at the Crossing

From: no-reply@realpage.com

To: juliettelowe@ymail.com

Date: Tuesday, July 16, 2024 at 10:37 AM EDT

---

**Somerset at the Crossing**
100 Summerwalk Pkwy
Tucker , GA 30084-8401
(770) 938-4211
www.somersetcrossingsapts.com
somersetcrossing@greystar.com

**Transfer statement**
**Juliette Lowe**
Move-in 08/18/2024

### Lease information

| | |
|---|---|
| Move in | **08/18/2024** |
| Begin | **08/18/2024** |
| End | **11/17/2025** |
| Leasing consultant | **Amy Berganske** |
| Late method* | **Greystar Late Fee** |

**If this is different from the current lease, it will go into effect when the transfer lease does.*

### Resident information

| | |
|---|---|
| Name | **Juliette Lowe** |
| Phone | **(813) 451-9118** |
| Email | **juliettelowe@ymail.com** |

### Unit information

| | |
|---|---|
| Current unit | **1310** |
| Transfer to | **1402** |

### Due at move-in

| | |
|---|---|
| Floorplan deposit, C1Puz (unit 1402) | **0.00** |
| Scheduled billing prorate | |
| Base Rent, unit 1402 | **857.61** |
| Trash Service | **3.16** |
| Pest Control Services | **1.35** |
| Resident Insurance | **5.42** |
| Zero Deposit Waiver | **13.55** |
| Total | **881.09** |

### Scheduled billing

| | |
|---|---|
| Base Rent, unit 1402 | **1,899.00** |
| Trash Service | **7.00** |
| Pest Control Services | **3.00** |
| Resident Insurance | **12.00** |
| Zero Deposit Waiver | **30.00** |
| Total | **1,951.00** |

**Does not include utility billing.*

### Specials

Selected special

| | |
|---|---|
| Floor level | 0 |
| Floor plan | C1Puz |
| Bedrooms / bathrooms | 3/2 |
| Square feet | 1550 |
| Address | 1402 Summerwalk Parkway Tucker , GA 30084 |

**Payments made**

Total

**Payment schedule /**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Aug 2024 | **881.09** | Dec 2024 | **1951.00** | Apr 2025 | **1951.00** | Aug 2025 | **1951.00** |
| Sep 2024 | **1951.00** | Jan 2025 | **1951.00** | May 2025 | **1951.00** | Sep 2025 | **1951.00** |
| Oct 2024 | **1951.00** | Feb 2025 | **1951.00** | Jun 2025 | **1951.00** | Oct 2025 | **1951.00** |
| Nov 2024 | **1951.00** | Mar 2025 | **1951.00** | Jul 2025 | **1951.00** | Nov 2025 | **1105.57** |

**INSURANCE BENEFITS**

If you are like most renters, you probably think that you do not need renters� insurance. Did you know that the owner of this apartment community is not responsible for and does not insure your personal property? In addition, you may be held responsible for loss or damage that you or your guests may accidentally cause.

As an added service to our residents, the management of this apartment community is working with a leading insurance company to offer you high quality, low cost insurance protection. The e.RenterPlan insurance products available to you as a resident of this community include a Renter�s Insurance policy covering your personal property and liability, and the other a Personal Liability policy only. Both offer affordable coverage options designed specifically for residents of professionally managed apartment communities.

If you elect to obtain coverage from another insurance carrier you will be asked to furnish the name of the selected insurance company, the policy number, and the effective and expiration dates of your policy when you complete the lease transaction.

Written information about the insurance programs available to the residents of this community can be obtained at the leasing office.

More detailed information can be found at www.eRenterPlan.com.

# Re: TOS to 1402

From: Juliette Lowe (juliettelowe@ymail.com)

To: somersetcrossingmgr@greystar.com

Date: Wednesday, July 17, 2024 at 09:09 AM EDT.

Good morning Amy,

This is a written request to transfer from 1310 to 1402 apartment unit.

Thank you for taking the time to speak with me regarding transferring apartment units. I will pay the fees associated with the transfer from 1310 to 1402.

> On Tuesday, July 16, 2024 at 10:11:08 AM EDT, Somerset at the Crossings Manager <somersetcrossingmgr@greystar.com> wrote:
>
> Hi Ms. Lowe,
> Please reply that you are requesting this transfer for our records.
> Thank-you!
>
> Amy Berganske | Community Manager
> **Somerset at the Crossings** | 100 Summerwalk Parkway | Tucker, GA 30084
> o 770.938.4211 | somersetcrossingmgr@greystar.com | greystar.com
>
> **The biggest compliment you can give us is a review...**
> Click below to review us!

Somerset at the Crossing - Payment Confirmation

From: Somerset at the Crossing (somerset_at_the_crossing@mail.welcomehome.com)

To: juliettelowe@ymail.com

Date: Wednesday, July 17, 2024 at 06:17 PM EDT

## Payment Confirmation

Please be sure to keep this email as your receipt confirmation.
If you paid from a bank account, this payment will be withdrawn on the next business day.

Dear Juliette,

Thanks for your payment to Somerset at the Crossing for Unit#1402 from Bank account ending 1040.

| | | | |
|---|---|---|---|
| Confirmation#: | 1GKJNF6RA01 | Payment Date: | 7/17/2024 |
| Payment Amount: | $400.00 | Convenience Fee: | $0.00 |
| Total Amount: | $400.00 | | |

**Please contact your property if you have questions about this transaction.**

**Your Account Payment has been initiated. Please allow up to 3 business days, not including bank holidays, for this transaction to clear your account. This is confirmation that the transaction has been initiated and is pending approval from your bank.**

Sincerely,
Somerset at the Crossing

To unsubscribe, click here.

## Re: TOS to 1402

From: Juliette Lowe (juliettelowe@ymail.com)

To: somersetcrossingmgr@greystar.com

Date: Tuesday, July 30, 2024 at 12:44 PM EDT

Good afternoon Amy,

I am checking in to make sure we are all set for 8/18/24. I made the $400 transfer fee a few weeks ago.

Sent from Yahoo Mail for iPhone

On Tuesday, July 16, 2024, 10:11 AM, Somerset at the Crossings Manager <somersetcrossingmgr@greystar.com> wrote:

Hi Ms. Lowe,
Please reply that you are requesting this transfer for our records.
Thank-you!

Amy Berganske | Community Manager
**Somerset at the Crossings** | 100 Summerwalk Parkway | Tucker, GA 30084
o 770.938.4211 | somersetcrossingmgr@greystar.com | greystar.com

**The biggest compliment you can give us is a review...**
Click below to review us!

*Law Offices of*

**GARY A. ROBERTS & ASSOCIATES, LLC**

A Limited Liability Company

GARY A. ROBERTS, ESQ.
garyr@garyrobertslaw.com

TIFFANI N. BROWN, ESQ.
tiffani@garyrobertslaw.com

August [], 2024

***Sent via certified and electronic mail:***
Somerset at the Crossings
c/o Kadaesha Brooks, Assistant Community Manager
100 Summerwalk Parkway
Tucker, GA 30084
*Somersetcrossingamgr@greystar.com*

Greystar Management
1545 Peachtree Street NE, Suite 700
Atlanta, GA 30309
*Nitza.peanpaulina@greystar.com*

**RE: Demand Letter Regarding Unit Transfer**
**Our Client | Juliette Lowe**

Dear Ms. Brooks:

Our law firm has been retained to represent Juliette Lowe (hereinafter "Client") regarding the Apartment Lease Agreement (hereinafter "Contract") with Somerset at the Crossings (hereinafter "Landlord"), for the rental property located at 1310 Summerwalk Parkway, Tucker, GA 30084 (hereinafter "Property") within The Somerset Crossings Apartment complex (hereinafter "Somerset"). Please direct future communications and any other related items regarding this matter to our attention.

***Background***

As you are aware, our Client entered into the Contract on or about November 13, 2022 to lease the Property pursuant to the Contract for a lease term beginning January 10, 2023, to January 9, 2024 (hereinafter "Lease Term") with a monthly rent in the amount of One Thousand Five Hundred Six U.S. Dollars and Zero Cents ($1,506.00). On or about July 16, 2024, our Client submitted a formal written request to transfer from her current unit 1310, to apartment 1402, within Somerset. In response, Somerset's then acting representative, Amy Berganske (hereinafter "Representative"), requested the written request and subsequently generated and provided to our Client a move-in statement that outlined the details of the transfer. These transfer details on the move-in statement included items such as: the move-in date; the lease term from August 18, 2024, to November 17, 2025; the monies due upon move-in; the corresponding scheduled billing; information regarding the transfer and unit information. See **attached Exhibit A**. In addition to the above, Somerset required a transfer fee of Four Hundred U.S. Dollars and Zero Cents ($400.00) that our Client remitted on or about July 17, 2024. However, in our Client's attempt to follow up with the then-acting Representative, our Client learned that she was no longer employed at Somerset and received correspondence from the new representative, Kadaesha Brooks

(hereinafter "Ms. Brooks"). In the correspondence, Ms. Brooks, indicated that on-site transfers were not being conducted at the time and to date, our Client has not been transferred to unit 1402 as intended.

***Legal Authority***

It is axiomatic that the clear and unambiguous words of a contract are the best evidence of the intent of the parties. The interpretation of a contract is a question of law unless the contract language presents an ambiguity that cannot be resolved by the rules of construction. The cardinal rule of construction is to ascertain the intent of the parties. Where the contract terms are clear and unambiguous, the court will look to that alone to find the true intent of the parties. Where ambiguities exist, the court may look outside the written terms of the contract and consider all the surrounding circumstances to determine the parties' intent. Parol evidence may not be considered unless the written instrument is ambiguous. *Moore v. Lovein Funeral Home,* 852 S.E.2d 876, 880 (Ga. Ct. App. 2020).

Notwithstanding the above, Georgia provides for a cause of action on an equitable theory called Promissory Estoppel. To prevail on a claim for promissory estoppel, our Client must show that "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.". *Zambetti v. Cheeley Invs., L.P.,* 343 Ga. App. 637, 645 n.11 (Ga. Ct. App. 2017). Based on the above, it appears that the then acting Representative made a promise to transfer our Client to unit 1402, a three bedroom unit, wherein the Representative reasonable expected to induce action by our Client, and did induce said action by our Client when the transfer fee was paid. Thus, these actions are those that should be binding on the Landlord to enforce and uphold the transfer, as to avoid any further injustice to our Client.

***Demand***

As such, please let this correspondence serve as a formal demand the Somerset immediately upholds the promise made by the then-acting representative, Amy Berganske, and transfer our Client to unit 1402 or a similarly situated Three (3) bedroom unit within five (5) calendar days from receipt of this correspondence.

Should we fail to receive any response **within five (5) calendar days from receipt of this letter,** we will assume you intend to reject this demand and pursue any and all legal remedies afforded to our Client.

Thank you for your prompt attention to this matter and we look forward to your compliance with the above. Please do not hesitate to reach out to our office at (850) 513-0505 or via e-mail at tiffani@garyrobertslaw.com and cc: tangi@garyrobertslaw.com, should you wish to further discuss.

Sincerely,

/s/ Tiffani Brown

Tiffani Brown, Esq.
Managing Attorney
**Gary A. Roberts & Associates, LLC**
*Attorneys for Juliette Lowe*

# Re: [EXTERNAL] Fw: URGENT RENEWAL SIGNING

From: Somerset at the Crossings Assistant Manager (somersetcrossingamgr@greystar.com)

To: juliettelowe@ymail.com

Date: Friday, August 9, 2024 at 08:20 AM EDT

Good Morning,

Thank you for moving promptly and getting your renewal completed! I appreciate your cooperation in this matter.

o Will tenants be allowed the option to transfer units due to their home situation changing ?
Per corporate we will not be doing any onsite transfers at the time. However, you can continue to inquire or we can contact you from the office when this has changed. I understand you have been wanting to transfer and would love to allow you that option when that has been approved again to our residents.

o Can tenants apply for a different unit being that their current or expired lease is non active?
Residents may apply for a new unit. They will have to give notice on the current unit and be fully approved through our Verifast.

o What will be the MTM rate for a 2 bed 1 bath with somerset at the crossing after Monday September 1st 2024 ?
Each unit can have a different MTM rate. On your specific unit the MTM is $2469.

I also see where you stated you already signed documents but I have not sent anything as of yet. Once you confirm your decision then I will generate your documents for you to sign. The system has generated offers of a 14-month lease at your same rate $1506! The only changes to your current reoccurring charges would be trash and pest. The trash fee is now $10 and pest is $5. Please let me know if you have any other questions.

Best,
**Kadaesha Brooks** I Assistant Community Manager
**Somerset At The Crossings** I 100 Summerwalk Parkway I Tucker, GA 30084
770.938.4211 I somersetcrossingamgr@greystar.com I greystar.com

**Friday, September 13, 2024 at 12:54:28 Eastern Daylight Time**

**Subject:** Our Client | Juliette Lowe
**Date:** Friday, September 13, 2024 at 12:54:28 PM Eastern Daylight Time
**From:** Tiffani Brown
**Attachments:** image001.png

**From:** Tabitha Elligan <telligan@bwpf-law.com>
**Date:** Friday, September 13, 2024 at 12:46 PM
**To:** Tiffani Brown <Tiffani@garyrobertslaw.com>
**Cc:** Tangi Brown <Tangi@garyrobertslaw.com>, Somerset at the Crossings Assistant Manager <somersetcrossingamgr@greystar.com>, Nitza Pean Paulina <Nitza.peanpaulina@greystar.com>
**Subject:** RE: Our Client | Juliette Lowe

Tiffani –

Thank you for your email. Respectfully, it requires more than just a lease being generated. However, I was tasked with responding to your demand, which requested Somerset to transfer your client. We cannot accept your offer because there are no 3-bedroom apartments available at this time. You are asking why your client did not receive a lease, but that is a moot point today. There are no binding agreements in place. We are happy to consider other options, but I cannot grant your demand request.

I look forward to your reply.

**Tabitha Elligan | Managing Attorney**

Brownlee Whitlow & Praet
PROPERTY SOLUTIONS LAW

****PLEASE NOTE OUR NEW ADDRESS****
3525 Piedmont Road, Bldg 8, Suite 412
Atlanta, Georgia 30305
Firm: (919) 863-4305 | **Direct Phone: (404) 301-4449**
Email: telligan@bwpf-law.com
Web - BWPF-Law.com

The information in this email message is attorney privileged and confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copy of this message is strictly prohibited. If you have received this message in error, please immediately notify the sender by email or by contacting our firm at the numbers listed above. The typewritten signature included with this email is not an electronic signature within the meaning of Electronic Signatures in the Global and National Commerce Act or any other law of similar import, including without limitation, the Uniform Electronic Transactions Act, as the same may be enacted in any State.
**Consumer Debt Collection Warning: To the extent any portion of this email relates to a consumer debt, please be advised that this email message is an attempt to collect a debt and any information provided may be used for that purpose.**
**Consumer Electronic Mail Opt Out: If this email is in reference to a consumer debt, You have the right to opt out of future electronic communications. Please reply to this e-mail within 35 days and confirm that you do not want to receive further electronic communications.**

**From:** Tiffani Brown <Tiffani@garyrobertslaw.com>


somersetcrossingsapts.com/floor-plans.aspx
The Wellington
Unit #1409
Starting At: $ 2,086
3 Bed 2 Bath 1,550 Sqft
Available: 08/10/2024
Lease Term: 13 mos
Lease Now
Pricing and availability are subject to change. Rent is based on monthly frequency. Additional fees may apply, such as but not limited to package delivery, trash, water, amenities, etc. Floor plans are artist's rendering. All dimensions are approximate. Actual product and specifications may vary in dimension or detail. Not all features are available in every apartment. Please see a representative for details.
Bed
Bath
Sqft
3
2
1,550


Open Date & Time Preferences
The Wellington
Unit #1403
Starting At: $ 2,299
3 Bed 2 Bath 1,550 Sqft
Available: 10/12/2024
Lease Term: 14 mos
Lease Now
Unit #1407
Starting At: $ 1,877
3 Bed 2 Bath 1,330 Sqft
Available: 12/31/2024
Lease Term: 15 mos
Lease Now



Pricing and availability are subject to change. Rent is based on monthly frequency. Additional fees may apply, such as but not limited to package delivery, trash, water, amenities, etc. Floor plans are artist's rendering. All dimensions are approximate. Actual product and specifications may vary in dimension or detail. Not all features are available in every apartment. Please see a representative for details.

| Bed | Bath | Sqft |
|---|---|---|
| 3 | 2 | 1,550 |

The Wellington ×

**Unit #1403** Starting At: $ 1,884
3 Bed 2 Bath 1,550 Sqft
Available: 09/24/2024
Lease Term: 15 mos
Lease Now

**Unit #1410** Starting At: $ 2,109
3 Bed 2 Bath 1,550 Sqft
Available: 10/31/2024
Lease Term: 15 mos
Lease Now

**Unit #1407** Starting At: $ 1,894
3 Bed 2 Bath 1,550 Sqft
Available: 12/31/2024
Lease Term: 15 mos
Lease Now

Equal Housing Opportunity Provider

# APARTMENT LEASE CONTRACT

Date of Lease Contract: November 13, 2022
(when the Lease Contract is filled out)

*This is a binding document. Read carefully before signing.*

## Moving In — General Information

1. **PARTIES.** This Lease Contract (sometimes referred to as the "lease") is between *you*, the resident(s) *(list all people signing the Lease Contract)*:
Juliette Lowe

and *us*, the owner: Somerset at The Crossings

*(name of apartment community or title holder)*. You've agreed to rent apartment No. 1310, at 1310 Summerwalk Parkway *(street address)* in Tucker *(city)*, Georgia, 30084 *(zip code)* (the "apartment" or the "premises") for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above (or any of owner's successors' in interest or assigns). Written or electronic notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

2. **OCCUPANTS.** The apartment will be occupied only by you and *(list all other occupants not signing the Lease Contract)*:
Junyiah Weller

No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than 7 consecutive days without our prior written consent, and no more than twice that many days in any one month. If the previous space isn't filled in, two days per month is the limit.

3. **LEASE TERM.** The initial term of the Lease Contract begins on the 10th day of January, 2023, and ends at 11:59 p.m. the 9th day of January, 2024.

**Renewal.** This Lease Contract will automatically renew month-to-month unless either party gives at least 60 days written notice of termination or intent to move-out as required by paragraph 46 (Move-Out Notice). If the number of days isn't filled in, at least 30 days notice is required.

4. **SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the apartment is $ 0.00, due on or before the date this Lease Contract is signed.

**Your security deposit will be** *(check one)*
☐ placed in an account at (state the bank's name) ______
located at (state the bank's address) ______;
OR
☐ secured by a bond which is on file with the ______ (County) Clerk of Superior Court.

In the event interest is earned on the security deposit, Owner may keep the interest.

5. **KEYS.** You will be provided 2 apartment key(s), 2 mailbox key(s), 1 FOB(s), and/or 0 other access device(s) for access to the building and amenities at no additional cost at move-in. If the key, FOB, or other access device is lost or becomes damaged during your tenancy or is not returned or is returned damaged when you move out, you will be responsible for the costs for the replacement and/or repair of the same.

6. **RENT AND CHARGES.** Unless modified by addenda, you will pay $ 1506.00 per month for rent, payable in advance and without demand:

☐ at the on-site manager's office, or
☒ at our online payment site, or
☒ at the on-site manager's office which accepts Cashier's Checks only

Prorated rent of $ 1068.77 is due for the remainder of *(check one)*: ☒ 1st month or ☐ 2nd month, on January 10, 2023.

Otherwise, you must pay your rent on or before the 1st day of each month (due date) with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. At our discretion, we may convert any and all checks via the Automated Clearing House (ACH) system for the purposes of collecting payment. Rent is not considered accepted, if the payment/ACH is rejected, does not clear, or is stopped for any reason. If you don't pay all rent on or before the 3rd day of the month, you'll pay a late charge. Your late charge will be *(check one)*: ☒ a flat rate of $ 100.00 or ☐ ______ % of your total monthly rent payment. Regardless of the calculation method chosen above, the total amount of your late charges shall not exceed ten percent (10%) of your monthly rent payment. You'll also pay a charge of $ 50.00 for each returned check or rejected electronic payment, plus a late charge. If you don't pay rent on time, you'll be delinquent and all remedies under state law and this Lease Contract will be authorized. We'll also have all other remedies for such violation.

The failure to pay rent timely or the violation of the animal restrictions will result in added administrative and other expenses to us. Since such additional expenses are difficult to determine, late fees and animal violation charges are considered liquidated damages. The amount of such fees and charges are reasonable estimates of the administrative and other expenses we would incur. Animal violation charges do not cover damages to the premises and don't limit your liability for same. All payment obligations under this Lease Contract shall constitute rent under this Lease Contract.

7. **UTILITIES.** We'll pay for the following items, if checked:
☐ water ☐ gas ☐ electricity ☐ master antenna
☐ wastewater ☐ trash ☐ cable TV
☐ other ______

© 2022, National Apartment Association, Inc. - 5/2022, Georgia

You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities other than cable TV not provided by us to be disconnected for any reason—including disconnection for not paying your bills—until the lease term or renewal period ends. Cable channels that are provided may be changed during the Lease Contract term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-powered lighting. If any utilities are submetered for the apartment, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state or local law. You must not heat the apartment using gas-operated stoves or ovens which were intended for use in cooking.

**Important Disclosure Regarding Management's Right to Select the Natural Gas Marketer (Provider). Resident (the Tenant) authorizes Management (the Landlord) to act as Resident's agent for the limited purpose of selecting the Resident's natural gas marketer, to authorize the natural gas marketer to obtain credit information on the Resident, if required by the marketer, and to enroll the Resident on the marketer's standard variable price plan for which the Resident is eligible, unless the Resident chooses another price plan for which he or she is eligible. Resident acknowledges that Management may have business relationship with the natural gas marketer that may provide for a financial or other benefit to Management in exchange for the Resident's enrollment with the Marketer.

8. **INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

In addition, we urge all Tenants, and particularly those residing in coastal areas, areas near rivers, and areas prone to flooding, to obtain flood insurance. Renter's insurance may not cover damage to your property due to flooding. A flood insurance resource which may be available includes the National Flood Insurance Program managed by the Federal Emergency Management Agency (FEMA).

We urge you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like.

Additionally, you are *[check one]* ☒ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance throughout your tenancy, including any renewal periods and/or lease extensions, is an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

You acknowledge that no portion of the rent paid by you under this agreement will be specifically allocated for the purchase of the owner's structural fire insurance, though the owner may use a portion of gross rental proceeds obtained from all rental units in the community to purchase such structural fire insurance, and in such an event, that you are in no way a co-insured under any such policy.

9. **LOCKS AND LATCHES.** Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done before you move in to your apartment.

You may at any time ask us to change or rekey locks or latches during the Lease Term. We must comply with those requests, but you must pay for them, unless otherwise provided by law.

**Payment for Rekeying, Repairs, Etc.** You must pay for all repairs or replacements arising from misuse or damage to devices by you or your occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which was misused or damaged by you, your guest or an occupant; or if you have requested that we repair or change or rekey the same device during the 30 days preceding your request and we have complied with your request. Otherwise, you must pay immediately after the work is completed.

## Special Provisions and "What If" Clauses

10. **SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed Lease Contract form.

See Additional Special Provisions

See any additional special provisions.

11. **EARLY MOVE-OUT.** You'll be liable to us for a reletting charge of $ 1506.00 (not to exceed 100% of the highest monthly rent during the Lease Contract term) if you:

(1) fail to give written move-out notice as required in paragraphs 24 (Military Transfer and Lease Termination) or 46 (Move-Out Notice); or
(2) move out without paying rent in full for the entire Lease Contract term or renewal period; or
(3) move out at our demand because of your default; or
(4) are judicially evicted.

The reletting charge is not a cancellation fee and does not release you from your obligations under this Lease Contract.

**Not a Release.** The reletting charge is not a Lease Contract cancellation fee or buyout fee. It is an agreed-to liquidated amount covering only part of our damages; that is, our time, effort, and expense in finding and processing a replacement resident. Those damages are uncertain and difficult to ascertain—particularly those relating to inconvenience, paperwork, advertising, showing apartments, utilities for showing, checking prospects, office overhead, marketing costs, and locator-service fees. You agree that the reletting charge is a reasonable estimate of such damages and that the charge is due whether or not our reletting attempts succeed. If no amount is stipulated, you must pay our actual reletting costs so far as they can be determined. The reletting charge does not release you from continued liability for: future or past-due rent; charges for cleaning, repairing, repainting, or unreturned keys; or other sums due.

12. **REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the apartment or apartment community due to a violation of the Lease Contract or rules, improper use, or negligence by you or your guests or occupants. Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following that result from your or your invitees, guests, or occupants' negligence or intentional acts: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

13. **CONTRACTUAL LIEN AND PROPERTY LEFT IN APARTMENT. All property in the apartment is subject to a contractual lien to secure payment of delinquent rent.** For this purpose, "apartment" excludes common areas but includes interior living areas and exterior patios, balconies, attached garages, and storerooms for your exclusive use.

**Removal After Surrender, Abandonment, or Eviction.** We or law officers may remove and/or store all property remaining in the apartment or in common areas (including any vehicles you or any occupant or guest owns or uses) if you are judicially evicted or if you surrender or abandon the apartment (see definitions in paragraph 51 - Deposit Return, Surrender, and Abandonment).

**Storage.** We may store, but have no duty to store, property removed after judicial eviction, surrender, or abandonment of the apartment. We're not liable for casualty loss, damage, or theft of such property. You must pay reasonable charges for our packing, removing, storing, and selling any property. We have a lien on all property removed and stored after surrender, abandonment, or judicial eviction for all sums you owe.

**Redemption.** If we've removed and stored property after surrender, abandonment, or judicial eviction, you may redeem only by paying all sums you owe, including rent, late charges, reletting charges, storage, damages, etc. We may return redeemed property at the place of storage, the management office, or the apartment (at our option). We may require payment by cash, money order, or certified check.

**Disposition or Sale.** Except for animals and property removed after the death of a sole resident, we may throw away or give to a charitable organization all items of personal property that are: (1) left in the apartment after surrender or abandonment; or (2) left outside more than 24 hours after a writ of possession is executed, following a judicial eviction. Animals removed after surrender, abandonment, or eviction may be kenneled or turned over to local authorities or humane societies. Property not thrown away or given to charity may be disposed of only by sale, which must be held no sooner than 30 days after written notice of date, time, and place of sale is sent by both regular mail and certified mail (return receipt requested) to your last known address. The notice must itemize the amounts you owe and the name, address, and phone number of the person to contact about the sale, the amount owed, and your right to redeem the property. Sale may be public or private, is subject to any third-party ownership or lien claims, must be to the highest cash bidder, and may be in bulk, in batches, or item-by-item. Proceeds exceeding sums owed must be mailed to you at your last known address within 30 days after sale.

14. **FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent when or before the Lease Contract begins, we may end your right of occupancy and recover damages, future rent, reletting charges, attorney's fees, court costs, and other lawful charges. Our mitigation duties under paragraph 33 (Default by Resident) still apply.

15. **RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10 (Special Provisions), by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 19 (Community Policies or Rules). If, at least 5 days before the advance notice deadline referred to in paragraph 3 (Lease Term), we give you written notice of rent increases or Lease Contract changes effective when the Lease Contract term or renewal period ends, this Lease Contract will automatically continue month-to-month with the increased rent or Lease Contract changes. The new modified Lease Contract will begin on the date stated in the notice (without necessity of your signature) unless you give us written move-out notice under paragraph 46 (Move-Out Notice).

16. **DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later.

(1) If we give written notice to any of you when or after the initial term as set forth in paragraph 3 (Lease Term)—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date—you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

(2) If we give written notice to any of you before the initial term as set forth in paragraph 3 (Lease Term) and the notice states that construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new initial term as set forth in paragraph 3 (Lease Term) for all purposes. This new date may not be moved to an earlier date unless we and you agree.

17. **AD VALOREM TAXES/FEES AND CHARGES - ADDITIONAL RENT.** Unless otherwise prohibited by law, if, during the term of this Agreement, any locality, city, state, or Federal Government imposes upon Us, any fee, charge, or tax, which is related to or charged by the number of occupants, or by the apartment itself, such that we are charged a fee, charge, or tax, based upon your use or occupancy of the apartment, we may add this charge as Additional Rent, during the term of the Lease Contract, with thirty (30) days advance written notice to you. After this written notice (the amount or approximate amount of the charge, will be included), you agree to pay, as Additional Rent, the amount of the charge, tax or fee imposed upon us, as a result of your occupancy. As examples, these charges can include, but are not limited to: any charges we receive for any zoning violation, sound, noise or litter charge; any charge under any nuisance or chronic nuisance type statute, 911 or other life safety, per person, or per unit charge or tax and any utility bill unpaid by you, which is then assessed to us for payment.

18. **DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it.

## While You're Living in the Apartment

19. **COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules, effective immediately, if they are distributed and applicable to all units in the apartment community and do not change dollar amounts on page 1 of this Lease Contract.

20. **LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean and free of trash, garbage, and other debris. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. You agree to keep all passageways and common areas free of obstructions such as trash, storage items, and all forms of personal property. No person shall ride or allow bikes, skateboards, or other similar objects in the passageways. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in all common areas. You, your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps or kerosene heaters without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of business (including child care services) in your apartment or in the apartment community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas. You'll be liable to us for damage caused by you or any guests or occupants.

We may exclude from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

21. **PROHIBITED CONDUCT.** You and your occupants or guests may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community; or injuring our reputation by making bad faith allegations against us to others.

© 2022, National Apartment Association, Inc. - 5/2022, Georgia

**22. PARKING.** We may regulate the time, manner, and place of parking cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles by anyone. We may remove unauthorized or illegally parked vehicles from the apartment community at your expense under the terms of this Lease Contract or by appropriate statute. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license plate or no current registration and/or inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other resident(s) or unit(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster; or
(13) belongs to a resident and is parked in a visitor or retail parking space.

**23. RELEASE OF RESIDENT.** Unless you're entitled to terminate your tenancy as pertains to a Family Violence Order under this paragraph or under paragraphs 10 (Special Provisions), 16 (Delay of Occupancy), 24 (Military Transfer and Lease Termination), 32 (Responsibilities of Owner), or 46 (Move-Out Notice), you won't be released from this Lease Contract for any reason—including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

**RELEASE OR TERMINATION DUE TO A FAMILY VIOLENCE COURT ORDER.** You may terminate the Lease Contract by giving us a 30 day written notice and a copy of the family violence order as provided in OCGA 44-7-23 if a Court has issued a civil or criminal family violence order protecting you or your minor child. If you obtained an ex parte temporary protective order (TPO) you must also provide a copy of the police incident report on which the order was based.

The termination will take effect on the 30th day after providing us your written Lease Contract termination notice accompanied by a copy of the family violence order; however, you may continue to occupy the apartment until the termination date. You will continue to be responsible for any past due rent and rent that comes due prorated through the date your Lease Contract termination is effective. Also, you are responsible for all other sums that come due or are incurred through the Lease Contract termination date.

If you signed the Lease Contract but have not yet taken possession of the apartment you may terminate the Lease Contract prior to taking possession by giving us at least 14 days written notice and providing a copy of the family violence order and a copy of the police incident report if the order was an ex parte TPO. If you give us a proper 14 day termination notice based on a family violence order prior to taking possession of the apartment you are not liable for payment of any rent or other fees, and the Lease Contract will terminate.

**24. MILITARY TRANSFER AND LEASE TERMINATIONS.** A resident (including a resident's spouse) who is a service member on active duty or is called to active duty in the regular or the reserve component of the U.S. Armed Forces, U.S. Coast Guard or National Guard, shall have the right to end this Apartment Rental Contract early by giving 30 days written notice, paying all rent due through the notice date, and providing a copy of the official military orders or written verification signed by the service member's commanding officer or by providing base housing orders as provided in OCGA Section 44-7-22, if the service member is:

(1) Ordered to federal duty for a period of 90 days or longer;

(2) Receives a permanent change of station orders to move at least 35 miles away from the rental housing;

(3) Is released from active duty after leasing housing and must move 35 miles or more away from the service member's home of record prior to entering active duty;

(4) After entering into this rental agreement, the service member becomes eligible to live in government quarters or the failure to move to government quarters will result in a forfeiture of the member's basic allowance for housing;

(5) Receives temporary duty orders or temporary change of station orders or state active duty orders for a period exceeding 60 days that is at least 35 miles away from the location of the rental housing; or

(6) Receives orders after signing the lease but before taking possession of the rental housing.

After you deliver to us your written termination notice, the Lease Contract will be terminated under this military clause 30 days after the date on which your next rental payment is due. You must furnish us a copy of your military orders, such as permanent change-of-station orders, call-up orders, or deployment orders or written notification from your commanding officer. Military permission for base housing does not constitute change-of-station order. After you move out, we'll return your security deposit, less lawful deductions. For the purposes of this Lease Contract, orders described in (2) above will only release the resident who qualifies under (1) and (2) above and receives the orders during the Lease Contract term and such resident's spouse or legal dependents living in the resident's household. A co-resident who is not your spouse or dependent cannot terminate under this military clause. Unless you state otherwise in paragraph 10 (Special Provisions), you represent when signing this Lease Contract that: (1) you do not already have deployment or change-of-station orders; (2) you will not be retiring from the military during the Lease Contract term; and (3) the term of your enlistment or obligation will not end before the Lease Contract term ends. Even if you are entitled to terminate this Lease Contract under this paragraph, liquidated damages for making a false representation of the above will be the amount of unpaid rent for the remainder of the lease term when and if you move out, less rents from others received in mitigation under paragraph 33 (Default by Resident). You must immediately notify us if you are called to active duty or receive deployment or permanent change-of-station orders.

**25. RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors and carbon monoxide detectors, keyed deadbolt locks, keyless bolting devices, window latches, and access control devices.

**Smoke Detectors and Carbon Monoxide Detectors.** We'll furnish smoke detectors and carbon monoxide detectors only if required by statute or ordinance, and we'll test them and provide working batteries when you first take possession. After that, you must test the smoke detectors and the carbon monoxide detectors on a regular basis, and must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report smoke detector and carbon monoxide detector malfunctions to us. Neither you nor others may disable neither the smoke detectors nor the carbon monoxide detectors. If you damage or disable the smoke detector or carbon monoxide detector or remove a battery without replacing it with a working battery, you will be liable to us for $100 plus one month's rent, actual damages, and attorney's fees. If you disable or damage the smoke detector or carbon monoxide detector, or fail to replace a dead battery or report malfunctions to us, you will be liable to us and others for any loss, damage, or fines from fire, smoke, or water. We both must comply with any local smoke detector and carbon monoxide detector ordinances.

**Casualty Loss.** We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, interruption of utilities, theft, or vandalism unless otherwise required by law. We have no duty to remove any ice, sleet, or snow but may remove any amount with or without notice. During freezing weather, you must ensure that the temperature in the apartment is sufficient to make sure that the pipes do not freeze (the appropriate temperature will depend upon weather conditions and the size and layout of your unit). If the pipes freeze or any other damage is caused by your failure to properly maintain the heat in your apartment, you'll be liable for damage to our and other's property. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for those services.

**Crime or Emergency.** Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity, or other emergency involving imminent harm. You should then contact our representative. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security. If we provide any access control devices or security measures upon the property, they are not a guarantee to prevent crime or to reduce the risk of crime on the property. You agree that no access control or security measures

can eliminate all crime and that you will not rely upon any provided access control or security measures as a warranty or guarantee of any kind. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You also must furnish us with the law-enforcement agency's incident report number upon request.

**26. CONDITION OF THE PREMISES AND ALTERATIONS.** You accept the apartment, fixtures, and furniture as is. We disclaim all implied warranties. You'll be given an Inventory and Condition form on or before move-in. Prior to move-in, you must sign and note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors and carbon monoxide detectors, furniture, telephone and cable TV wiring, screens, locks, and access control devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

**27. REQUESTS, REPAIRS, AND MALFUNCTIONS.** IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST—FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS—IT MUST BE SUBMITTED THROUGH EITHER THE ONLINE RESIDENT/MAINTENANCE PORTAL, OR SIGNED AND IN WRITING AND DELIVERED TO OUR DESIGNATED REPRESENTATIVE (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections. Rent will not abate in whole or in part.

If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate this Lease Contract within a reasonable time by giving you written notice. If the Lease Contract is so terminated, we'll refund prorated rent and all deposits, less lawful deductions.

**28. ANIMALS.** Unless otherwise provided under federal, state, or local law, no animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the Apartment or Apartment Community unless we've so authorized in writing. You must remove an illegal or unauthorized animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. If we allow an animal as a pet, you must execute a separate animal addendum which may require additional deposits, rents, fees or other charges. An animal deposit is considered a general security deposit. We will authorize an assistance animal for a disabled person. When allowed by applicable laws, before we authorize an assistance animal, if the disability is not readily apparent, we may require a written statement from a qualified professional verifying the disability-related need for the assistance animal. If we authorize an assistance animal, we may require you to execute a separate animal and/or assistance animal addendum. Animal deposits, additional rents, fees or other charges will not be required for an assistance animal needed due to disability, including an emotional support or service animal, as authorized under federal, state, or local law. You must not feed stray or wild animals.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules. We may remove an unauthorized animal by (1) leaving, in a conspicuous place in the apartment, a 24-hour written notice of intent to remove the animal, and (2) following the procedures of paragraph 29 (When We May Enter). We may keep or kennel the animal or turn it over to a humane society or local authority. When keeping or kenneling an animal, we won't be liable for loss, harm, sickness, or death of the animal unless due to our negligence. We'll return the animal to you upon request if it has not already been turned over to a humane society or local authority. You must pay for the animal's reasonable care and kenneling charges. We have no lien on the animal for any purpose.

**29. WHEN WE MAY ENTER.** If you or any guest or occupant is present, then repairers, servicers, contractors, our representatives or other persons listed in (2) below may peacefully enter the apartment at reasonable times for the purposes listed in (2) below. If nobody is in the apartment, such persons may enter peacefully and at reasonable times by duplicate or master key (or by breaking a window or other means when necessary in emergencies) if:

(1) written notice of the entry is left in a conspicuous place in the apartment immediately after the entry; and

(2) entry is for: responding to your request; making repairs or replacements; estimating repair or refurbishing costs; performing pest control; doing preventive maintenance; changing filters; testing or replacing smoke-detector and carbon monoxide detector batteries; retrieving unreturned tools, equipment or appliances; preventing waste of utilities; exercising our contractual lien; leaving notices; delivering, installing, reconnecting, or replacing appliances, furniture, equipment, or access control devices; removing or rekeying unauthorized access control devices; removing unauthorized window coverings; stopping excessive noise; removing health or safety hazards (including hazardous materials), or items prohibited under our rules; removing perishable foodstuffs if your electricity is disconnected; removing unauthorized animals; cutting off electricity according to statute; retrieving property owned or leased by former residents; inspecting when immediate danger to person or property is reasonably suspected; allowing persons to enter as you authorized in your rental application (if you die, are incarcerated, etc.); allowing entry by a law officer with a search or arrest warrant, or in hot pursuit; showing apartment to prospective residents (after move-out or vacate notice has been given); or showing apartment to government inspectors for the limited purpose of determining housing and fire ordinance compliance by us and to lenders, appraisers, contractors, prospective buyers, or insurance agents.

**30. JOINT AND SEVERAL RESPONSIBILITY.** Each resident is jointly and severally liable for all Lease Contract obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of tenancy termination, repair requests, and entry permissions) constitute notice from all residents. In eviction suits, each resident is considered the agent of all other residents in the apartment for service of process. Security-deposit refunds and deduction itemizations of multiple residents will comply with paragraph 51 (Deposit Return, Surrender, and Abandonment).

## Replacements

**31. REPLACEMENTS AND SUBLETTING.** Replacing a resident, subletting, assignment, or granting a right or license to occupy is allowed only when we expressly consent in writing. If departing or remaining residents find a replacement resident acceptable to us before moving out and we expressly consent, in writing, to the replacement, subletting, assignment, or granting a right or any license to occupy, then:

(1) a reletting charge *will not* be due;
(2) a reasonable administrative (paperwork) and/or transfer fee *will* be due, and a rekeying fee *will* be due if rekeying is requested or required; and
(3) the departing and remaining residents will remain liable for all lease obligations for the rest of the original lease term.

**Procedures for Replacement.** If we approve a replacement resident, then, at our option: (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit; *or* (2) the remaining and replacement residents must sign an entirely new Lease Contract. Unless we agree otherwise in writing, your security deposit will automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right to occupancy or a security deposit refund, but will remain liable for the remainder of the original Lease Contract term unless we agree otherwise in writing—even if a new Lease Contract is signed.

## Responsibilities of Owner and Resident

**32. RESPONSIBILITIES OF OWNER.** We'll act with customary diligence to:

(1) keep common areas reasonably clean, subject to paragraph 26 (Condition of the Premises and Alterations);
(2) maintain fixtures, furniture, hot water, heating and A/C equipment;
(3) comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing; and
(4) make all reasonable repairs, subject to your obligation to pay for damages for which you are liable.

If we violate any of the above, you may terminate your tenancy and exercise other remedies under state statute only as follows:

(a) you must make a written request for repair or remedy of the condition, and all rent must be current at the time;
(b) after receiving the request, we have a reasonable time to repair, considering the nature of the problem and the reasonable availability of materials, labor, and utilities;
(c) if we haven't diligently tried to repair within a reasonable time, you must then give us written notice of intent to terminate your tenancy unless the repair is made within 7 days;
(d) if repair hasn't been made within 7 days, you may terminate your tenancy and exercise other statutory remedies. Security deposits and prorated rent will be refunded as required by law;
(e) you may terminate your tenancy under this provision only if the repair or condition is so material and substantial as to render the apartment unfit for habitation; and
(f) you must move out of the apartment on or before the termination date specified in your notice.

**33. DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates the apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (3) you abandon the apartment; (4) you give incorrect, misleading, or false answers in a rental application; (5) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (6) any illegal drugs or drug paraphernalia are found in your apartment; (7) you or your occupants or guests sell, distribute, solicit, possess, or control any illegal drugs or drug paraphernalia in your vehicle, your apartment, anywhere in the apartment community, or on your person; (8) you or any guest or occupant engages in any of the prohibited conduct described in paragraph 21 (Prohibited Conduct); or (9) you or any occupant, in bad faith, makes an invalid complaint to an official or employee of a utility company or the government.

**Eviction.** If you default, we may end your right of occupancy by giving you a 24-hour written notice to vacate. Notice may be by: (1) regular mail; (2) certified mail, return receipt requested; (3) personal delivery to any resident; (4) personal delivery at the apartment to any occupant over 16 years old; (5) affixing the notice to the inside of the apartment's main entry door. Termination of your possession rights or subsequent reletting doesn't release you from liability for future rent or other lease obligations.

**Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then: (1) the rental value of your apartment while you hold over is due in advance on a monthly basis and shall be delinquent without notice or demand; (2) the rental value for the holdover period will be increased by 25% over the then-existing rent, without notice; (3) you'll be liable to us for all rent for the full term of the previously signed Lease Contract of a new resident who can't occupy because of the holdover; and (4) at our option, we may extend the lease term--for up to one month from the date of notice of lease extension--by delivering written notice to you or your apartment while you continue to hold over.

**Other Remedies.** We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amounts stated to be rental discounts in paragraph 10 (Special Provisions), in addition to other sums due. Upon your default, we have all other legal remedies, including tenancy termination. The prevailing party may recover from the non-prevailing party 15% attorney's fees and all other litigation costs. Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs). All unpaid amounts bear 16% interest per year from due date, compounded annually. You must pay all collection-agency fees if you fail to pay all sums due within 10 days after we mail you a letter demanding payment and stating that collection agency fees will be added if you don't pay all sums by that deadline.

**Remedies Cumulative.** Any remedies set forth herein shall be cumulative, in addition to, and not in limitation of, any other remedies available to Landlord under any applicable law.

**Mitigation of Damages.** If you move out early, you'll be subject to paragraph 11 (Early Move-Out) and all other remedies. We'll exercise customary diligence to relet and mitigate damages. We'll credit all subsequent rent that we actually receive from subsequent residents against your liability for past-due and future rent and other sums due.

## General Clauses

**34. ENTIRE AGREEMENT.** Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us.

**35. NO AUTHORITY TO AMEND UNLESS IN WRITING.** Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing.

**36. NO WAIVER.** No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, acceleration, liens, or other rights isn't a waiver under any circumstances.

**37. NOTICE.** Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo, letter or fax that was given. Fax signatures are binding. All notices must be signed.

© 2022, National Apartment Association, Inc. - 5/2022, Georgia

**38. MISCELLANEOUS.**

A. Exercising one remedy won't constitute an election or waiver of other remedies.
B. Unless prohibited by law or the respective insurance policies, insurance subrogation is waived by all parties.
C. All remedies are cumulative.
D. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf.
E. This Lease Contract binds subsequent owners.
F. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract.
G. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies.
H. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option.
I. All Lease Contract obligations must be performed in the county where the apartment is located.
J. All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.
K. Resident agrees and understands that the terms and conditions of this agreement, including any and all rules and regulations or other documents or policies referred to herein, will be construed and applied under and according to the laws of the state of Georgia.

**39. WAIVER OF JURY TRIAL.** To minimize legal expenses and, to the extent allowed by law, you and we agree that a trial of any lawsuit based on statute, common law, and/or related to this Lease Contract shall be to a judge and not a jury.

**40. LIMITATIONS ON ACTIONS.** To the extent allowed by law, Resident also agrees and understands that any legal action against Management or Owner must be instituted within one year of the date any claim or cause of action arises and that any action filed after one year from such date shall be time barred as a matter of law.

**41. CONTACTING YOU.** By signing this lease, you are agreeing that we, our representative(s) or agent(s) may contact you. You agree that we may contact you using any contact information relating to your lease including any number (i) you have provided to us (ii) from which you called us, or (iii) which we obtained and through which we reasonably believe we can reach you. You agree we may use any means to contact you. This may include calls made to your cellular telephone using an automatic telephone dialing system, artificial or prerecorded voice messages, text messages, mail, e-mail, and calls to your phone or Voice over Internet Protocol (VoIP) service, or any other data or voice transmission technology. You agree to promptly notify us if you change any contact information you provide to us. You are responsible for any service provider charges as a result of us contacting you.

**42. OBLIGATION TO VACATE.** If we provide you with a notice to vacate, or if you provide us with a written notice to vacate or intent to move-out in accordance with paragraph 3 (Lease Term), and we accept such written notice, then you are required to vacate the premises and remove all of your personal property therefrom at the expiration of the Lease term without further notice or demand from us.

Although the property may currently be providing cable on a bulk basis to the resident, the property may, with 30 days notice to the resident, cease providing cable and the resident will contract directly with the cable provider for such services.

You affirmatively state that you are not a criminal sex offender.

**43. FORCE MAJEURE:** If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

**44. PAYMENTS.** Payment of all sums is an independent covenant. At our option and without notice, we may apply money received (other than sale proceeds under paragraph 13 (Contractual Lien and Property Left in Apartment) or utility payments subject to governmental regulations) first to any of your unpaid obligations, then to current rent—regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments.

**45. ASSOCIATION MEMBERSHIP.** We represent that either: (1) we or; (2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local apartment (multi-housing) associations for the area where the apartment is located.

## When Moving Out

**46. MOVE-OUT NOTICE.** Before moving out, either at the end of the lease term, any extension of the lease term, or prior to the end of the lease term, you must give our representative advance written notice of your intention to vacate as required by paragraph 3 (Lease Term). If you move out prior to the end of the lease term, your notice does not act as a release of liability for the full term of the Lease Contract. You will still be liable for the entire Lease Contract term if you move out early (see paragraph 23 - Release of Resident) except if you are able to terminate the Lease Contract under the statutory rights explained under paragraph 11 (Early Move-Out), paragraph 23 (Release of Resident), and paragraph 24 (Military Transfer and Lease Termination). All notices to vacate must be in writing and must provide the date by which you intend to vacate. If the notice does not comply with the time requirements of paragraph 3 (Lease Term), even if you move by the last date in the lease term, you will be responsible for an additional month's rent. If you fail to vacate by the date set forth in your notice, your notice is void and you must submit a new written notice. If you fail to provide proper notice and vacate, you will be responsible for an additional month's rent. The one month's rent represents the period that the apartment sits vacant and constitutes actual damages for loss of rent.

**47. MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the lease or renewal period ends unless all rent for the entire lease term or renewal period is paid in full. Early move-out may result in reletting charges and liability for future rent under paragraphs 11 (Early Move-Out) and 33 (Default by Resident). You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must vacate the apartment before the 30-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**48. CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

**49. MOVE-OUT INSPECTION.** Within 3 business days after the Lease Contract terminates and you vacate the premises or within 3 business days after you surrender and we accept back possession of the apartment - whichever occurs first - we'll inspect your unit and prepare a comprehensive list of damage done during your occupancy (over and above normal wear) and the estimated dollar value of the damage.

Upon your request within 5 business days after the Lease Contract terminates and you vacate the premises or upon your request within 5 business days after you surrender and we accept back possession of the apartment - whichever occurs first - you have the right to inspect the premises and inspect our list of damages and estimated dollar value of the damages.

If you are present with us at the time of the inspection we will both sign the damage list which will become conclusive evidence of the accuracy of the list. If you refuse to sign the list, you must state specifically in writing the items on the list with which you object or dissent. You may note your objections or dissent on the list we prepare, or you may submit a separate list of your objections and dissent to our list.

Within 30 days after obtaining possession of your unit once the Lease Contract terminates and you vacate the premises or within 30 days after you surrender and we accept possession of the premises – whichever occurs first - we will either: 1) return your full security

deposit; or 2) return the remaining portion (if any) of your security deposit less any amounts we deducted for damages exceeding wear and tear, unpaid rent, or other charges or fees you owe us under the Lease Contract. If we do not return your full security deposit we will send you the remaining balance of the deposit (if any) along with a copy of the damage list and estimated value from our inspection.

If you vacate or surrender the premises without notifying us, we will inspect the premises and compile the list of damages and estimated value within a reasonable time after we discover you surrendered the premises or vacated.

If you are present at the move out inspection after vacating and sign the final damage list or if you are present at the move out inspection and do not object or dissent in writing to the items on the list, you are not entitled to recover your security deposit or other damages under OCGA 44-7-35.

If you did not request a copy of the final damage list and you did not inspect the premises after vacating you still will have the right to dispute the damages we assessed against your security deposit.

If you did not request a copy of the final damage list and were not present for our inspection after vacating you still will have the right to dispute the damages we assessed against your security deposit.

**50. SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You'll be liable for the following charges, if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing dead or missing smoke-detector or carbon monoxide detectors batteries; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone or TV cable services or rental items (if you so request or have moved out); trips to open the apartment when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized access control devices or alarm systems; agreed reletting charges; packing, removing, or storing property removed or stored under paragraph 13 (Contractual Lien and Property Left in Apartment); removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; animal-related charges under paragraph 28 (Animals); government fees or fines against us for violation (by you, your occupants, or guests) of local ordinances relating to smoke detectors and carbon monoxide detectors, false alarms, recycling, or other matters; late-payment and returned-check charges; a charge (not to exceed $100) for owner/manager's time and inconvenience in our lawful removal of an animal; attorney's fees, court costs, and filing fees actually paid or incurred with respect to an eviction proceeding, your default, or as otherwise provided by law or in this Lease Contract; and other sums due under this Lease Contract.

You'll be liable to us for: (1) charges for replacing all keys and access devices referenced in paragraph 5 (Keys) if you fail to return them on or before your actual move-out date; (2) all delinquent and future rent if you have violated paragraph 33 (Default by Resident); and (3) a reletting fee if you have violated paragraph 11 (Early Move-Out).

**51. DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.**
**Deposit Return and Forwarding Address.** You are required to provide us written notice of your forwarding address, on or before termination of this Lease Contract. We'll mail you, to the forwarding address you provide, your security deposit refund (less lawful deductions) and an itemized accounting of any deductions within the time provided by law to either the forwarding address if notice is provided, or if unknown, to the last known address.

**Surrender.** You have surrendered the apartment when: (1) the move-out date has passed and no one is living in the apartment in our reasonable judgment; or (2) all apartment keys and access devices listed in paragraph 5 (Keys) have been turned in where rent is paid—whichever date occurs first.

**Abandonment.** You have abandoned the apartment when all of the following have occurred: (1) everyone appears to have moved out with the intention to give up all rights to occupy or use the apartment in our reasonable judgment; (2) you've been in default for non-payment of rent for 5 consecutive days or water, gas, or electric service for the apartment that we are not responsible for paying for under paragraph 7 (Utilities) has been terminated; and (3) you've not responded for 2 days to our notice left on the inside of the main entry door, stating that we consider the apartment abandoned.

Surrender, abandonment, and judicial eviction end your right of possession for all purposes and gives us the immediate right to: clean up, make repairs in, and relet the apartment; determine any security deposit deductions; and remove property left in the apartment. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (paragraph 13 - Contractual Lien and Property Left in Apartment), but do not affect our mitigation obligations (paragraph 33 - Default by Resident).

## Severability, Originals and Attachments, and Signatures

**52. SEVERABILITY.** If any provision of this Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Lease Contract. The court shall interpret the lease and provisions herein in a manner such as to uphold the valid portions of this Lease Contract while preserving the intent of the parties.

**53. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, with original signatures. We will provide you with a copy of the Lease Contract. Your copy of the Lease Contract may be in paper format, in an electronic format at your request, or sent via e-mail if we have communicated by e-mail about this Lease. Our rules and community policies, if any, will be attached to the Lease Contract and provided to you at signing. When an Inventory and Condition form is completed, you should retain a copy, and we should retain a copy. Any addenda or amendments you sign as a part of executing this Lease Contract are binding and hereby incorporated into and made part of the Lease Contract between you and us. This lease is the entire agreement between you and us. You acknowledge that you are NOT relying on any oral representations. A copy or scan of this Lease Contract and related addenda, amendments, and agreements may be used for any purpose and shall be treated as an original.

**54. DISCLOSURE NOTICE.** Name and address of the company or party authorized to manage the apartment community: ____________

________________________________________

________________________________________

________________________________________

Name and address of the company or party authorized to receive notices or lawsuits: ____________

________________________________________

________________________________________

________________________________________

Management's corporate name and license number as required by the rules of the Georgia Real Estate Commission (Ga. R. & Reg. 520-1-.10 are ____________

________________________________________

(Corporate Name of Licensed Managing Agent) and ____________

(GREC corporate license number of Managing Agent).

**You are legally bound by this document.**
**Read it carefully before signing.**

| Resident or Residents *(all sign below)* | Date Signed |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |

| Owner or Owner's Representative *(signing on behalf of owner)* | Date Signed |
|---|---|
| | |

© 2022, National Apartment Association, Inc. - 5/2022, Georgia

**Name, address and phone number of managing agent for the property for notice purposes. This person or entity is authorized to receive services of process and to manage the property.**

Greystar
1545 Peachtree Street NE, Suite 700
Atlanta, GA 30309

**Name and address of locator service** ***(if applicable)***

SPECIAL PROVISIONS (CONTINUED FROM PAGE 2) Management does not offer after hours lockout service. Evictions: Filling fee of $200 will be charged on the 10th of each month. Additional charges may apply for other legal fees incurred. Upon the 3rd filling, we will not accept rent and you will be asked to move immediately. All residents are required to purchase & maintain renter's insurance policy throughout lease term.

**Equal Housing Opportunity Provider**

HEAD OF HOUSEHOLD
Juliette Lowe
SIGNED 11/14/2022 AT 12:02PM EST

DOCUMENT OWNER
Brenda Rodriguez
SIGNED 12/22/2022 AT 10:44AM EST

©2022, National Apartment Association, Inc. - Georgia/National Apartment Association Official Form, May 2022

23D35778
MAGISTRATE COURT OF DEKALB COUNTY, GA
12/28/2023 9:31 AM**E-FILED**
23D35778
Clerk Kim Brock

1031928

**MAGISTRATE COURT OF DEKALB COUNTY**

DeKalb Courthouse - Civil Division
556 N. McDonough Street, Room 200
Decatur, GA 30030
404-371-2261

CREC McDowell Somerset, JV d/b/a Somerset at the Crossing
100 SUMMERWALK PARKWAY,
TUCKER GA 30084
770-938-4211 DispoCourt@pdqservices.net
PLAINTIFF'S NAME/ADDRESS/PHONE/EMAIL

CASE # ____________

v. JULIETTE LOWE and all others

1310 SUMMERWALK PARKWAY
TUCKER GA 30084
DEFENDANT'S NAME & ADDRESS

J. Mike Williams #765209
2970 Clairmont Road, Suite 220
Atlanta GA 30329
PLAINTIFF'S ATTORNEY NAME/ADDRESS/PHONE/EMAIL

1. Defendant is in possession as tenant of the premises at the address in DeKalb County as stated above.
2. Affiant is the ☐ Owner ☐ Attorney ☒ Agent ☐ Tenant and owner of said premises.
3. Defendant ☒ fails to pay the rent which is now past due;
   ☐ holds the premises over and beyond the term for which they were rented or leased to him;
   ☐ is a tenant at sufferance;
   ☐ other grounds: ____________
4. Plaintiff desires and has demanded possession of the premises.
5. Defendant has failed and refused to deliver possession of the premises.

**WHEREFORE, Plaintiff DEMANDS**
(a) Possession of the premises.
(b) Past due rent of $ 1506.00 for the month(s) December 2023
(c) Rent accruing up to the date of judgement of vacancy at the rate of $ 1506.00 per Monthly
(d) Other: 100.00 LATE Fees 80.56 Utilities,52.00 other fees 0,

*By affixing this electronic verification, oath, or affidavit to the pleading(s) submitted to the court and attaching my electronic signature hereon, I do hereby swear or affirm that the statements set forth in the above pleading(s) are true and correct.*

| /s/ Kadaesha Brooks | 12/28/2023 | 770-938-4211 DispoCourt@pdqservices.net |
|---|---|---|
| PLAINTIFF(S) or AFFIANT | DATE | PHONE NUMBER / EMAIL ADDRESS |

**SUMMONS**

TO THE MARSHAL of the State Court of DeKalb County or his lawful deputies, GREETINGS:

The defendant herein is hereby commanded and required personally or by attorney to file with the Clerk of the Magistrate Court of DeKalb County, 2nd Floor, Suite 200, Administrative Tower, DeKalb County Courthouse, 556 N. McDonough St., Decatur, Georgia within seven (7) days from the date of service of the within affidavit and summons (or on the first business day thereafter if the seventh day falls on Saturday, Sunday or legal holiday) then and there to answer said affidavit either online, in writing or orally (orally means in front of a deputy clerk). If no Answer is made, a writ of possession shall issue instanter. WITNESS the Honorable Chief Judge of said Court. The above affidavit was sworn to and subscribed before the undersigned Deputy Clerk by affiant as provided by O.C.G.A. § 44-7-50 and summons issues pursuant thereto.

This ________ day of ____________, ______

Clerk Kim Brock 12/28/2023 9:32 AM
DEPUTY CLERK, Magistrate Court of DeKalb County

**PRIVATE PROCESS SERVER AFFIDAVIT OF SERVICE**

I have served the foregoing Affidavit and Summons on the Defendant(s) by delivering a copy of same:
☐PERSONALLY ☐ DEFENDANT NOT FOUND AT WITHIN ADDRESS ON SAID SUMMONS AND AFFIDAVIT
☐NOTORIOUSLY (NAME) ____________ Age _____ Wt. _____ Ht. _____
☐TACK & MAIL. Posting a copy to the door of the premises and depositing a copy in the U.S. Mail, First Class in an envelope properly addressed after attempting personal service. Said copy containing notice to the Defendant(s) to answer at the hour and place in said summons.

DATE OF SERVICE: ____________ DEFENDANT TO ANSWER ON OR BEFORE: ____________

PROFESSIONAL PROCESS SERVER NOTARY

**ANSWER**

To file your answer online visit www.AnswerDispo.com and enter your case number. All Answers must be electronically filed by 11:59PM on or before the last day to answer this summons. A service charge applies for online answers. No service charge applies to answers made written or orally at the courthouse.

23D35778

IN THE MAGISTRATE COURT OF DEKALB COUNTY

STATE OF GEORGIA

CREC McDowell Somerset, JV d/b/a Somerset at the Crossing

vs.

Juliette Lowe and All Other Occupants

Civil Case No:

23D 35778

DISMISSAL WITHOUT PREJUDICE

COMES NOW, the above named plaintiff and hereby dismisses the above styled action against the defendant(s) without prejudice.

Respectfully submitted,

This 25 day of January, 2024

J. Mike Williams
2970 Clairmont Road Suite 220
Atlanta, Ga 30329
4046335114

765209

1188134-1031928

MAGISTRATE COURT OF
DEKALB COUNTY, GA.
2/22/2024 1:43 PM
FILED
BY: Laura R Rodriguez

# IN THE UNITED STATES DISTRICT COURT

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

DEC 1 1 2025

KEVIN P. WEIMER, Clerk
By: Deputy Clerk

**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**Juliette Lowe,**
Plaintiff,

v.

**Greystar Management Services, LP,**
**Somerset at the Crossings Apartments,**
Defendants.

Civil Action No.: ____________________

# COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND JURY DEMAND

---

## I. JURISDICTION AND VENUE

1. This action arises under the **Fair Housing Act**, 42 U.S.C. §§ 3601–3619, and 42 U.S.C. § 1982.
2. Jurisdiction is proper under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 42 U.S.C. § 3613(a).
3. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in this district, and the property at issue is located here.

---

## II. PARTIES

4. Plaintiff **Juliette Lowe** is a Black single woman and former tenant of Somerset at the Crossings Apartments. She is currently unhoused and residing in an extended stay hotel.
5. Defendant **Greystar Management Services, LP** is a property management company doing business in Georgia, including managing Somerset at the Crossings.
6. Defendant **Somerset at the Crossings Apartments** is a residential apartment complex located at 100 Summerwalk Parkway, Tucker, GA 30084.

## III. FACTUAL ALLEGATIONS

### A. Approved Transfer and Discriminatory Revocation

8. On July 16, 2024, Plaintiff's request to transfer from her two-bedroom unit to Unit 1402, a three-bedroom unit, was approved in writing by the then-Community Manager, Amy Berganske.
9. Plaintiff was given a detailed move-in statement with rental terms and a start date of August 18, 2024, and paid the $400 transfer fee on July 17, 2024.
10. Plaintiff selected the unit after being invited to do so by management and began preparations to relocate in reliance on this approval.
11. In August 2024, Defendant revoked the transfer, first citing a "system error" and later stating "corporate is not allowing transfers at this time."
12. During this same period, other tenants of different races and national origins including a Black couple with a white dog and an Indian couple were allowed to transfer to three-bedroom units.

### B. False Denial of Available Housing

13. On September 13, 2024, Plaintiff's attorney sent a formal demand to Defendants to honor the approved transfer.
14. Defendants' attorney responded by claiming "no three-bedroom units were available."
15. Plaintiff possesses time-stamped screenshots from Defendants' own website showing multiple three-bedroom units available that same day.
16. This constitutes a false denial of available housing in violation of 42 U.S.C. § 3604(d).

### C. Retaliation and Constructive Eviction

17. After the revocation, Defendants gave Plaintiff only Six days to renew her existing lease or face market-rate rent, in violation of 42 U.S.C. § 3617.
18. Plaintiff's rent was increased $1,000, and she was later billed $1,500 in move-out charges.
19. In December 2023, Defendants filed an eviction against Plaintiff without providing a written demand or proper service. The case was dismissed in January 2024 but remains on public record, harming Plaintiff's housing prospects.

### D. Unauthorized Entry and Property Removal

20. While Plaintiff was still in possession and paying rent, Defendants allowed vendors to enter without notice to begin renovations.
21. On November 8, 2024, management admitted in writing that this occurred before her move-out date and took "full responsibility."
22. Plaintiff's personal property was removed from her patio without consent, requiring police intervention.

**E. Ongoing Harm and Displacement**

23. As a direct and proximate result of Defendants' actions, Plaintiff has been displaced from stable housing for nearly a year.
24. Plaintiff was forced to relocate to a rat-infested apartment, lived with family temporarily, and is now residing in an extended stay hotel.
25. Plaintiff's minor daughter has had to change schools three times and live temporarily out of state.
26. Plaintiff checked into a wellness center for five weeks in May 2025 for mental health treatment and is currently unemployed after a FMLA leave for severe depression.
27. Plaintiff remains unhoused as of the date of filing.

## IV. CAUSES OF ACTION

**Count I – Denial of Housing / Making Housing Unavailable**
(42 U.S.C. § 3604(a))

**Count II – Discrimination in Terms, Conditions, or Privileges of Rental**
(42 U.S.C. § 3604(b))

**Count III – False Denial of Housing Availability**
(42 U.S.C. § 3604(d))

**Count IV – Retaliation and Interference**
(42 U.S.C. § 3617)

**Count V – Equal Property Rights Regardless of Race**
(42 U.S.C. § 1982)

**Count VI – Wrongful Eviction and Due Process Violation**
(Under federal civil rights principles and incorporated state law)

---

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:
a. Enter judgment in favor of Plaintiff and against Defendants, jointly and severally;
b. Award **compensatory damages** in the amount of **$1,200,000** for economic and non-economic losses;
c. Award **punitive damages** in the amount of **$800,000** for willful and reckless disregard of Plaintiff's federally protected rights;
d. Award reasonable attorney's fees and costs under 42 U.S.C. § 3613(c)(2);
e. Grant injunctive relief requiring Defendants to remove the false eviction record and cease discriminatory practices;
f. Award such other and further relief as this Court deems just and proper.

---

## VI. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,
Juliette Lowe, Plaintiff

# Move-in statement from Somerset at the Crossing

From: no-reply@realpage.com

To: juliettelowe@ymail.com

Date: Tuesday, July 16, 2024 at 10:37 AM EDT

**Somerset at the Crossing**
100 Summerwalk Pkwy
Tucker , GA 30084-8401
(770) 938-4211
www.somersetcrossingsapts.com
somersetcrossing@greystar.com

**Transfer statement**
**Juliette Lowe**
Move-in 08/18/2024

## Lease information

| | |
|---|---|
| Move in | **08/18/2024** |
| Begin | **08/18/2024** |
| End | **11/17/2025** |
| Leasing consultant | **Amy Berganske** |
| Late method* | **Greystar Late Fee** |

**If this is different from the current lease, it will go into effect when the transfer lease does.*

## Resident information

| | |
|---|---|
| Name | **Juliette Lowe** |
| Phone | **(813) 451-9118** |
| Email | **juliettelowe@ymail.com** |

## Unit information

| | |
|---|---|
| Current unit | **1310** |
| Transfer to | **1402** |

## Due at move-in

| | |
|---|---|
| Floorplan deposit, C1Puz (unit 1402) | **0.00** |
| Scheduled billing prorate | |
| Base Rent, unit 1402 | **857.61** |
| Trash Service | **3.16** |
| Pest Control Services | **1.35** |
| Resident Insurance | **5.42** |
| Zero Deposit Waiver | **13.55** |
| Total | **881.09** |

## Scheduled billing

| | |
|---|---|
| Base Rent, unit 1402 | **1,899.00** |
| Trash Service | **7.00** |
| Pest Control Services | **3.00** |
| Resident Insurance | **12.00** |
| Zero Deposit Waiver | **30.00** |
| Total | **1,951.00** |

**Does not include utility billing.*

## Specials

Selected special

| | |
|---|---|
| Floor level | 0 |
| Floor plan | **C1Puz** |
| Bedrooms / bathrooms | **3/2** |
| Square feet | **1550** |
| Address | **1402 Summerwalk Parkway Tucker , GA 30084** |

**Payments made**

Total

**Payment schedule /**

| | | | |
|---|---|---|---|
| Aug 2024 **881.09** | Dec 2024 **1951.00** | Apr 2025 **1951.00** | Aug 2025 **1951.00** |
| Sep 2024 **1951.00** | Jan 2025 **1951.00** | May 2025 **1951.00** | Sep 2025 **1951.00** |
| Oct 2024 **1951.00** | Feb 2025 **1951.00** | Jun 2025 **1951.00** | Oct 2025 **1951.00** |
| Nov 2024 **1951.00** | Mar 2025 **1951.00** | Jul 2025 **1951.00** | Nov 2025 **1105.57** |

**INSURANCE BENEFITS**

If you are like most renters, you probably think that you do not need renters� insurance. Did you know that the owner of this apartment community is not responsible for and does not insure your personal property? In addition, you may be held responsible for loss or damage that you or your guests may accidentally cause.

As an added service to our residents, the management of this apartment community is working with a leading insurance company to offer you high quality, low cost insurance protection. The e.RenterPlan insurance products available to you as a resident of this community include a Renter�s Insurance policy covering your personal property and liability, and the other a Personal Liability policy only. Both offer affordable coverage options designed specifically for residents of professionally managed apartment communities.

If you elect to obtain coverage from another insurance carrier you will be asked to furnish the name of the selected insurance company, the policy number, and the effective and expiration dates of your policy when you complete the lease transaction.

Written information about the insurance programs available to the residents of this community can be obtained at the leasing office.

More detailed information can be found at www.eRenterPlan.com.

# Re: TOS to 1402

From: Juliette Lowe (juliettelowe@ymail.com)

To: somersetcrossingmgr@greystar.com

Date: Wednesday, July 17, 2024 at 09:09 AM EDT

Good morning Amy,

This is a written request to transfer from 1310 to 1402 apartment unit.

Thank you for taking the time to speak with me regarding transferring apartment units. I will pay the fees associated with the transfer from 1310 to 1402.

> On Tuesday, July 16, 2024 at 10:11:08 AM EDT, Somerset at the Crossings Manager <somersetcrossingmgr@greystar.com> wrote:
>
> Hi Ms. Lowe,
> Please reply that you are requesting this transfer for our records.
> Thank-you!
>
> Amy Berganske | Community Manager
> **Somerset at the Crossings** | 100 Summerwalk Parkway | Tucker, GA 30084
> o 770.938.4211 | somersetcrossingmgr@greystar.com | greystar.com
>
> **The biggest compliment you can give us is a review...**
> Click below to review us!

# Somerset at the Crossing - Payment Confirmation

From: Somerset at the Crossing (somerset_at_the_crossing@mail.welcomehome.com)

To: juliettelowe@ymail.com

Date: Wednesday, July 17, 2024 at 06:17 PM EDT

## Payment Confirmation

Please be sure to keep this email as your receipt confirmation.
If you paid from a bank account, this payment will be withdrawn on the next business day.

Dear Juliette,

Thanks for your payment to Somerset at the Crossing for Unit#1402 from Bank account ending 1040.

| | | | |
|---|---|---|---|
| Confirmation#: | 1GKJNF6RA01 | Payment Date: | 7/17/2024 |
| Payment Amount: | $400.00 | Convenience Fee: | $0.00 |
| Total Amount: | $400.00 | | |

**Please contact your property if you have questions about this transaction.**

**Your Account Payment has been initiated. Please allow up to 3 business days, not including bank holidays, for this transaction to clear your account. This is confirmation that the transaction has been initiated and is pending approval from your bank.**

Sincerely,
Somerset at the Crossing

To unsubscribe, click here.

## Re: TOS to 1402

From: Juliette Lowe (juliettelowe@ymail.com)

To: somersetcrossingmgr@greystar.com

Date: Tuesday, July 30, 2024 at 12:44 PM EDT

Good afternoon Amy,

I am checking in to make sure we are all set for 8/18/24. I made the $400 transfer fee a few weeks ago.

Sent from Yahoo Mail for iPhone

On Tuesday, July 16, 2024, 10:11 AM, Somerset at the Crossings Manager <somersetcrossingmgr@greystar.com> wrote:

Hi Ms. Lowe,
Please reply that you are requesting this transfer for our records.
Thank-you!

Amy Berganske | Community Manager
**Somerset at the Crossings** | 100 Summerwalk Parkway | Tucker, GA 30084
o 770.938.4211 | somersetcrossingmgr@greystar.com | greystar.com

**The biggest compliment you can give us is a review...**
Click below to review us!

*Law Offices of*
**GARY A. ROBERTS & ASSOCIATES, LLC**
A Limited Liability Company

GARY A. ROBERTS, ESQ.
garyr@garyrobertslaw.com

TIFFANI N. BROWN, ESQ.
tiffani@garyrobertslaw.com

August [], 2024

***Sent via certified and electronic mail:***
Somerset at the Crossings
c/o Kadaesha Brooks, Assistant Community Manager
100 Summerwalk Parkway
Tucker, GA 30084
*Somersetcrossingamgr@greystar.com*

Greystar Management
1545 Peachtree Street NE, Suite 700
Atlanta, GA 30309
*Nitza.peanpaulina@greystar.com*

**RE: Demand Letter Regarding Unit Transfer**
**Our Client | Juliette Lowe**

Dear Ms. Brooks:

Our law firm has been retained to represent Juliette Lowe (hereinafter "Client") regarding the Apartment Lease Agreement (hereinafter "Contract") with Somerset at the Crossings (hereinafter "Landlord"), for the rental property located at 1310 Summerwalk Parkway, Tucker, GA 30084 (hereinafter "Property") within The Somerset Crossings Apartment complex (hereinafter "Somerset"). Please direct future communications and any other related items regarding this matter to our attention.

***Background***

As you are aware, our Client entered into the Contract on or about November 13, 2022 to lease the Property pursuant to the Contract for a lease term beginning January 10, 2023, to January 9, 2024 (hereinafter "Lease Term") with a monthly rent in the amount of One Thousand Five Hundred Six U.S. Dollars and Zero Cents ($1,506.00). On or about July 16, 2024, our Client submitted a formal written request to transfer from her current unit 1310, to apartment 1402, within Somerset. In response, Somerset's then acting representative, Amy Berganske (hereinafter "Representative"), requested the written request and subsequently generated and provided to our Client a move-in statement that outlined the details of the transfer. These transfer details on the move-in statement included items such as: the move-in date; the lease term from August 18, 2024, to November 17, 2025; the monies due upon move-in; the corresponding scheduled billing; information regarding the transfer and unit information. See **attached Exhibit A**. In addition to the above, Somerset required a transfer fee of Four Hundred U.S. Dollars and Zero Cents ($400.00) that our Client remitted on or about July 17, 2024. However, in our Client's attempt to follow up with the then-acting Representative, our Client learned that she was no longer employed at Somerset and received correspondence from the new representative, Kadaesha Brooks

(hereinafter "Ms. Brooks"). In the correspondence, Ms. Brooks, indicated that on-site transfers were not being conducted at the time and to date, our Client has not been transferred to unit 1402 as intended.

***Legal Authority***

It is axiomatic that the clear and unambiguous words of a contract are the best evidence of the intent of the parties. The interpretation of a contract is a question of law unless the contract language presents an ambiguity that cannot be resolved by the rules of construction. The cardinal rule of construction is to ascertain the intent of the parties. Where the contract terms are clear and unambiguous, the court will look to that alone to find the true intent of the parties. Where ambiguities exist, the court may look outside the written terms of the contract and consider all the surrounding circumstances to determine the parties' intent. Parol evidence may not be considered unless the written instrument is ambiguous. *Moore v. Lovein Funeral Home*, 852 S.E.2d 876, 880 (Ga. Ct. App. 2020).

Notwithstanding the above, Georgia provides for a cause of action on an equitable theory called Promissory Estoppel. To prevail on a claim for promissory estoppel, our Client must show that "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.". *Zambetti v. Cheeley Invs., L.P.*, 343 Ga. App. 637, 645 n.11 (Ga. Ct. App. 2017). Based on the above, it appears that the then acting Representative made a promise to transfer our Client to unit 1402, a three bedroom unit, wherein the Representative reasonable expected to induce action by our Client, and did induce said action by our Client when the transfer fee was paid. Thus, these actions are those that should be binding on the Landlord to enforce and uphold the transfer, as to avoid any further injustice to our Client.

***Demand***

As such, please let this correspondence serve as a formal demand the Somerset immediately upholds the promise made by the then-acting representative, Amy Berganske, and transfer our Client to unit 1402 or a similarly situated Three (3) bedroom unit within five (5) calendar days from receipt of this correspondence.

Should we fail to receive any response **within five (5) calendar days from receipt of this letter,** we will assume you intend to reject this demand and pursue any and all legal remedies afforded to our Client.

Thank you for your prompt attention to this matter and we look forward to your compliance with the above. Please do not hesitate to reach out to our office at (850) 513-0505 or via e-mail at tiffani@garyrobertslaw.com and cc: tangi@garyrobertslaw.com, should you wish to further discuss.

Sincerely,

/s/ Tiffani Brown

Tiffani Brown, Esq.
Managing Attorney
**Gary A. Roberts & Associates, LLC**
*Attorneys for Juliette Lowe*

# Re: [EXTERNAL] Fw: URGENT RENEWAL SIGNING

From: Somerset at the Crossings Assistant Manager (somersetcrossingamgr@greystar.com)

To: juliettelowe@ymail.com

Date: Friday, August 9, 2024 at 08:20 AM EDT

Good Morning,

Thank you for moving promptly and getting your renewal completed! I appreciate your cooperation in this matter.

o Will tenants be allowed the option to transfer units due to their home situation changing ?
Per corporate we will not be doing any onsite transfers at the time. However, you can continue to inquire or we can contact you from the office when this has changed. I understand you have been wanting to transfer and would love to allow you that option when that has been approved again to our residents.

o Can tenants apply for a different unit being that their current or expired lease is non active?
Residents may apply for a new unit. They will have to give notice on the current unit and be fully approved through our Verifast.

o What will be the MTM rate for a 2 bed 1 bath with somerset at the crossing after Monday September 1st 2024 ?
Each unit can have a different MTM rate. On your specific unit the MTM is $2469.

I also see where you stated you already signed documents but I have not sent anything as of yet. Once you confirm your decision then I will generate your documents for you to sign. The system has generated offers of a 14-month lease at your same rate $1506! The only changes to your current reoccurring charges would be trash and pest. The trash fee is now $10 and pest is $5. Please let me know if you have any other questions.

Best,
**Kadaesha Brooks** | Assistant Community Manager
**Somerset At The Crossings** | 100 Summerwalk Parkway | Tucker, GA 30084
770.938.4211 | somersetcrossingamgr@greystar.com | greystar.com

**Friday, September 13, 2024 at 12:54:28 Eastern Daylight Time**

---

**Subject:** Our Client | Juliette Lowe
**Date:** Friday, September 13, 2024 at 12:54:28 PM Eastern Daylight Time
**From:** Tiffani Brown
**Attachments:** image001.png

---

**From:** Tabitha Elligan <telligan@bwpf-law.com>
**Date:** Friday, September 13, 2024 at 12:46 PM
**To:** Tiffani Brown <Tiffani@garyrobertslaw.com>
**Cc:** Tangi Brown <Tangi@garyrobertslaw.com>, Somerset at the Crossings Assistant Manager <somersetcrossingamgr@greystar.com>, Nitza Pean Paulina <Nitza.peanpaulina@greystar.com>
**Subject:** RE: Our Client | Juliette Lowe

Tiffani –

Thank you for your email. Respectfully, it requires more than just a lease being generated. However, I was tasked with responding to your demand, which requested Somerset to transfer your client. We cannot accept your offer because there are no 3-bedroom apartments available at this time. You are asking why your client did not receive a lease, but that is a moot point today. There are no binding agreements in place. We are happy to consider other options, but I cannot grant your demand request.

I look forward to your reply.

**Tabitha Elligan | Managing Attorney**

Brownlee Whitlow & Praet
PROPERTY SOLUTIONS LAW

****PLEASE NOTE OUR NEW ADDRESS****
3525 Piedmont Road, Bldg 8, Suite 412
Atlanta, Georgia 30305
Firm: (919) 863-4305 | **Direct Phone: (404) 301-4449**
Email: telligan@bwpf-law.com
Web - BWPF-Law.com

The information in this email message is attorney privileged and confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copy of this message is strictly prohibited. If you have received this message in error, please immediately notify the sender by email or by contacting our firm at the numbers listed above. The typewritten signature included with this email is not an electronic signature within the meaning of Electronic Signatures in the Global and National Commerce Act or any other law of similar import, including without limitation, the Uniform Electronic Transactions Act, as the same may be enacted in any State.

**Consumer Debt Collection Warning: To the extent any portion of this email relates to a consumer debt, please be advised that this email message is an attempt to collect a debt and any information provided may be used for that purpose.**

**Consumer Electronic Mail Opt Out: If this email is in reference to a consumer debt, You have the right to opt out of future electronic communications. Please reply to this e-mail within 35 days and confirm that you do not want to receive further electronic communications.**

---

**From:** Tiffani Brown <Tiffani@garyrobertslaw.com>


somersetcrossingsapts.com/floor-plans.aspx
The Wellington
Unit #1409
Starting At: $ 2,086
3 Bed 2 Bath 1,550 Sqft
Available: 08/10/2024
Lease Term: 13 mos
Lease Now
Pricing and availability are subject to change. Rent is based on monthly frequency. Additional fees may apply, such as but not limited to package delivery, trash, water, amenities, etc. Floor plans are artist's rendering. All dimensions are approximate. Actual product and specifications may vary in dimension or detail. Not all features are available in every apartment. Please see a representative for details.
Bed
Bath
Sqft
3
2
1,550


Chrome File Edit View History Bookmarks Profiles Tab Window Help
Open Date & Time Preferences...
The Wellington
Unit #1403
Starting At: $ 2,299
3 Bed 2 Bath 1,550 Sqft
Available: 10/12/2024
Lease Term: 14 mos
Unit #1407
Starting At: $ 1,877
3 Bed 2 Bath 1,550 Sqft
Available: 12/31/2024
Lease Term: 15 mos
Lease Now



*Pricing and availability are subject to change. Rent is based on monthly frequency. Additional fees may apply, such as but not limited to package delivery, trash, water, amenities, etc. Floor plans are artist's rendering. All dimensions are approximate. Actual product and specifications may vary in dimension or detail. Not all features are available in every apartment. Please see a representative for details.*

| Bed | Bath | Sqft |
|---|---|---|
| 3 | 2 | 1,550 |

**The Wellington** ×

Unit #1403 — Starting At: $ 1,884
3 Bed 2 Bath 1,550 Sqft
Available: 09/24/2024
Lease Term: 15 mos
Lease Now

Unit #1410 — Starting At: $ 2,109
3 Bed 2 Bath 1,550 Sqft
Available: 10/31/2024
Lease Term: 15 mos
Lease Now

Unit #1407 — Starting At: $ 1,894
3 Bed 2 Bath 1,550 Sqft
Available: 12/31/2024
Lease Term: 15 mos
Lease Now

Equal Housing Opportunity Provider

# APARTMENT LEASE CONTRACT

Date of Lease Contract: November 13, 2022 (when the Lease Contract is filled out)

*This is a binding document. Read carefully before signing.*

## Moving In — General Information

1. **PARTIES.** This Lease Contract (sometimes referred to as the "lease") is between *you*, the resident(s) *(list all people signing the Lease Contract)*:

Juliette Lowe

and *us*, the owner: Somerset at The Crossings

*(name of apartment community or title holder).* You've agreed to rent apartment No. 1310, at 1310 Summerwalk Parkway *(street address)* in Tucker *(city)*, Georgia, 30084 *(zip code)* (the "apartment" or the "premises") for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above (or any of owner's successors' in interest or assigns). Written or electronic notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

2. **OCCUPANTS.** The apartment will be occupied only by you and *(list all other occupants not signing the Lease Contract)*:

Junyiah Weller

No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than 7 consecutive days without our prior written consent, and no more than twice that many days in any one month. If the previous space isn't filled in, two days per month is the limit.

3. **LEASE TERM.** The initial term of the Lease Contract begins on the 10th day of January, 2023, and ends at 11:59 p.m. the 9th day of January, 2024.

**Renewal.** . This Lease Contract will automatically renew month-to-month unless either party gives at least 60 days written notice of termination or intent to move-out as required by paragraph 46 (Move-Out Notice). If the number of days isn't filled in, at least 30 days notice is required.

4. **SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the apartment is $ 0.00, due on or before the date this Lease Contract is signed.

Your security deposit will be *(check one)*

☐ placed in an account at (state the bank's name) ________ located at (state the bank's address) ________

OR

☐ secured by a bond which is on file with the ________ (County) Clerk of Superior Court.

In the event interest is earned on the security deposit, Owner may keep the interest.

5. **KEYS.** You will be provided 2 apartment key(s), 2 mailbox key(s), 1 FOB(s), and/or 0 other access device(s) for access to the building and amenities at no additional cost at move-in. If the key, FOB, or other access device is lost or becomes damaged during your tenancy or is not returned or is returned damaged when you move out, you will be responsible for the costs for the replacement and/or repair of the same.

6. **RENT AND CHARGES.** Unless modified by addenda, you will pay $ 1506.00 per month for rent, payable in advance and without demand:

☐ at the on-site manager's office, or
☒ at our online payment site, or
☒ at the on-site manager's office which accepts Cashier's Checks only

Prorated rent of $ 1068.77 is due for the remainder of *(check one)*: ☒ 1st month or ☐ 2nd month, on January 10, 2023.

Otherwise, you must pay your rent on or before the 1st day of each month (due date) with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. At our discretion, we may convert any and all checks via the Automated Clearing House (ACH) system for the purposes of collecting payment. Rent is not considered accepted, if the payment/ACH is rejected, does not clear, or is stopped for any reason. If you don't pay all rent on or before the 3rd day of the month, you'll pay a late charge. Your late charge will be *(check one)*: ☒ a flat rate of $ 100.00 or ☐ ____ % of your total monthly rent payment. Regardless of the calculation method chosen above, the total amount of your late charges shall not exceed ten percent (10%) of your monthly rent payment. You'll also pay a charge of $ 50.00 for each returned check or rejected electronic payment, plus a late charge. If you don't pay rent on time, you'll be delinquent and all remedies under state law and this Lease Contract will be authorized. We'll also have all other remedies for such violation.

The failure to pay rent timely or the violation of the animal restrictions will result in added administrative and other expenses to us. Since such additional expenses are difficult to determine, late fees and animal violation charges are considered liquidated damages. The amount of such fees and charges are reasonable estimates of the administrative and other expenses we would incur. Animal violation charges do not cover damages to the premises and don't limit your liability for same. All payment obligations under this Lease Contract shall constitute rent under this Lease Contract.

7. **UTILITIES.** We'll pay for the following items, if checked:
☐ water ☐ gas ☐ electricity ☐ master antenna
☐ wastewater ☐ trash ☐ cable TV
☐ other ________

© 2022, National Apartment Association, Inc. - 5/2022, Georgia

You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities other than cable TV not provided by us to be disconnected for any reason—including disconnection for not paying your bills—until the lease term or renewal period ends. Cable channels that are provided may be changed during the Lease Contract term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-powered lighting. If any utilities are submetered for the apartment, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state or local law. You must not heat the apartment using gas-operated stoves or ovens which were intended for use in cooking.

**Important Disclosure Regarding Management's Right to Select the Natural Gas Marketer (Provider). Resident (the Tenant) authorizes Management (the Landlord) to act as Resident's agent for the limited purpose of selecting the Resident's natural gas marketer, to authorize the natural gas marketer to obtain credit information on the Resident, if required by the marketer, and to enroll the Resident on the marketer's standard variable price plan for which the Resident is eligible, unless the Resident chooses another price plan for which he or she is eligible. Resident acknowledges that Management may have business relationship with the natural gas marketer that may provide for a financial or other benefit to Management in exchange for the Resident's enrollment with the Marketer.

8. **INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

In addition, we urge all Tenants, and particularly those residing in coastal areas, areas near rivers, and areas prone to flooding, to obtain flood insurance. Renter's insurance may not cover damage to your property due to flooding. A flood insurance resource which may be available includes the National Flood Insurance Program managed by the Federal Emergency Management Agency (FEMA).

We urge you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like.

Additionally, you are *[check one]* ☒ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance throughout your tenancy, including any renewal periods and/or lease extensions, is an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

You acknowledge that no portion of the rent paid by you under this agreement will be specifically allocated for the purchase of the owner's structural fire insurance, though the owner may use a portion of gross rental proceeds obtained from all rental units in the community to purchase such structural fire insurance, and in such an event, that you are in no way a co-insured under any such policy.

9. **LOCKS AND LATCHES.** Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done before you move in to your apartment.

You may at any time ask us to change or rekey locks or latches during the Lease Term. We must comply with those requests, but you must pay for them, unless otherwise provided by law.

**Payment for Rekeying, Repairs, Etc.** You must pay for all repairs or replacements arising from misuse or damage to devices by you or your occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which was misused or damaged by you, your guest or an occupant; or if you have requested that we repair or change or rekey the same device during the 30 days preceding your request and we have complied with your request. Otherwise, you must pay immediately after the work is completed.

## Special Provisions and "What If" Clauses

10. **SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed Lease Contract form.

See Additional Special Provisions

See any additional special provisions.

11. **EARLY MOVE-OUT.** You'll be liable to us for a reletting charge of $ 1506.00 (not to exceed 100% of the highest monthly rent during the Lease Contract term) if you:

(1) fail to give written move-out notice as required in paragraphs 24 (Military Transfer and Lease Termination) or 46 (Move-Out Notice); or
(2) move out without paying rent in full for the entire Lease Contract term or renewal period; or
(3) move out at our demand because of your default; or
(4) are judicially evicted.

The reletting charge is not a cancellation fee and does not release you from your obligations under this Lease Contract.

**Not a Release.** The reletting charge is not a Lease Contract cancellation fee or buyout fee. It is an agreed-to liquidated amount covering only part of our damages; that is, our time, effort, and expense in finding and processing a replacement resident. These damages are uncertain and difficult to ascertain—particularly those relating to inconvenience, paperwork, advertising, showing apartments, utilities for showing, checking prospects, office overhead, marketing costs, and locator-service fees. You agree that the reletting charge is a reasonable estimate of such damages and that the charge is due whether or not our reletting attempts succeed. If no amount is stipulated, you must pay our actual reletting costs so far as they can be determined. The reletting charge does not release you from continued liability for: future or past-due rent; charges for cleaning, repairing, repainting, or unreturned keys; or other sums due.

12. **REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the apartment or apartment community due to a violation of the Lease Contract or rules, improper use, or negligence by you or your guests or occupants. Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following that result from your or your invitees, guests, or occupants' negligence or intentional acts: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

13. **CONTRACTUAL LIEN AND PROPERTY LEFT IN APARTMENT.** **All property in the apartment is subject to a contractual lien to secure payment of delinquent rent.** For this purpose, "apartment" excludes common areas but includes interior living areas and exterior patios, balconies, attached garages, and storerooms for your exclusive use.

**Removal After Surrender, Abandonment, or Eviction.** We or law officers may remove and/or store all property remaining in the apartment or in common areas (including any vehicles you or any occupant or guest owns or uses) if you are judicially evicted or if you surrender or abandon the apartment (see definitions in paragraph 51 - Deposit Return, Surrender, and Abandonment).

**Storage.** We may store, but have no duty to store, property removed after judicial eviction, surrender, or abandonment of the apartment. We're not liable for casualty loss, damage, or theft of such property. You must pay reasonable charges for our packing, removing, storing, and selling any property. We have a lien on all property removed and stored after surrender, abandonment, or judicial eviction for all sums you owe.

**Redemption.** If we've removed and stored property after surrender, abandonment, or judicial eviction, you may redeem only by paying all sums you owe, including rent, late charges, reletting charges, storage, damages, etc. We may return redeemed property at the place of storage, the management office, or the apartment (at our option). We may require payment by cash, money order, or certified check.

© 2022, National Apartment Association, Inc. - 5/2022, Georgia

**Disposition or Sale.** Except for animals and property removed after the death of a sole resident, we may throw away or give to a charitable organization all items of personal property that are: (1) left in the apartment after surrender or abandonment; or (2) left outside more than 24 hours after a writ of possession is executed, following a judicial eviction. Animals removed after surrender, abandonment, or eviction may be kenneled or turned over to local authorities or humane societies. Property not thrown away or given to charity may be disposed of only by sale, which must be held no sooner than 30 days after written notice of date, time, and place of sale is sent by both regular mail and certified mail (return receipt requested) to your last known address. The notice must itemize the amounts you owe and the name, address, and phone number of the person to contact about the sale, the amount owed, and your right to redeem the property. Sale may be public or private, is subject to any third-party ownership or lien claims, must be to the highest cash bidder, and may be in bulk, in batches, or item-by-item. Proceeds exceeding sums owed must be mailed to you at your last known address within 30 days after sale.

**14. FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent when or before the Lease Contract begins, we may end your right of occupancy and recover damages, future rent, reletting charges, attorney's fees, court costs, and other lawful charges. Our mitigation duties under paragraph 33 (Default by Resident) still apply.

**15. RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10 (Special Provisions), by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 19 (Community Policies or Rules). If, at least 5 days before the advance notice deadline referred to in paragraph 3 (Lease Term), we give you written notice of rent increases or Lease Contract changes effective when the Lease Contract term or renewal period ends, this Lease Contract will automatically continue month-to-month with the increased rent or Lease Contract changes. The new modified Lease Contract will begin on the date stated in the notice (without necessity of your signature) unless you give us written move-out notice under paragraph 46 (Move-Out Notice).

**16. DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later.

(1) If we give written notice to any of you when or after the initial term as set forth in paragraph 3 (Lease Term)—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date—you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

(2) If we give written notice to any of you before the initial term as set forth in paragraph 3 (Lease Term) and the notice states that construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new initial term as set forth in paragraph 3 (Lease Term) for all purposes. This new date may not be moved to an earlier date unless we and you agree.

**17. AD VALOREM TAXES/FEES AND CHARGES - ADDITIONAL RENT.** Unless otherwise prohibited by law, if, during the term of this Agreement, any locality, city, state, or Federal Government imposes upon Us, any fee, charge, or tax, which is related to or charged by the number of occupants, or by the apartment itself, such that we are charged a fee, charge, or tax, based upon your use or occupancy of the apartment, we may add this charge as Additional Rent, during the term of the Lease Contract, with thirty (30) days advance written notice to you. After this written notice (the amount or approximate amount of the charge, will be included), you agree to pay, as Additional Rent, the amount of the charge, tax or fee imposed upon us, as a result of your occupancy. As examples, these charges can include, but are not limited to: any charges we receive for any zoning violation, sound, noise or litter charge; any charge under any nuisance or chronic nuisance type statute, 911 or other life safety, per person, or per unit charge or tax and any utility bill unpaid by you, which is then assessed to us for payment.

**18. DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it.

## While You're Living in the Apartment

**19. COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules, effective immediately, if they are distributed and applicable to all units in the apartment community and do not change dollar amounts on page 1 of this Lease Contract.

**20. LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean and free of trash, garbage, and other debris. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. You agree to keep all passageways and common areas free of obstructions such as trash, storage items, and all forms of personal property. No person shall ride or allow bikes, skateboards, or other similar objects in the passageways. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in all common areas. You, your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps or kerosene heaters without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of business (including child care services) in your apartment or in the apartment community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas. You'll be liable to us for damage caused by you or any guests or occupants.

We may exclude from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

**21. PROHIBITED CONDUCT.** You and your occupants or guests may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community; or injuring our reputation by making bad faith allegations against us to others.

© 2022, National Apartment Association, Inc. - 5/2022, Georgia

**22. PARKING.** We may regulate the time, manner, and place of parking cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles by anyone. We may remove unauthorized or illegally parked vehicles from the apartment community at your expense under the terms of this Lease Contract or by appropriate statute. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license plate or no current registration and/or inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other resident(s) or unit(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster; or
(13) belongs to a resident and is parked in a visitor or retail parking space.

**23. RELEASE OF RESIDENT.** Unless you're entitled to terminate your tenancy as pertains to a Family Violence Order under this paragraph or under paragraphs 10 (Special Provisions), 16 (Delay of Occupancy), 24 (Military Transfer and Lease Termination), 32 (Responsibilities of Owner), or 46 (Move-Out Notice), you won't be released from this Lease Contract for any reason—including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

**RELEASE OR TERMINATION DUE TO A FAMILY VIOLENCE COURT ORDER.** You may terminate the Lease Contract by giving us a 30 day written notice and a copy of the family violence order as provided in OCGA 44-7-23 if a Court has issued a civil or criminal family violence order protecting you or your minor child. If you obtained an ex parte temporary protective order (TPO) you must also provide a copy of the police incident report on which the order was based.

The termination will take effect on the 30th day after providing us your written Lease Contract termination notice accompanied by a copy of the family violence order; however, you may continue to occupy the apartment until the termination date. You will continue to be responsible for any past due rent and rent that comes due prorated through the date your Lease Contract termination is effective. Also, you are responsible for all other sums that come due or are incurred through the Lease Contract termination date.

If you signed the Lease Contract but have not yet taken possession of the apartment you may terminate the Lease Contract prior to taking possession by giving us at least 14 days written notice and providing a copy of the family violence order and a copy of the police incident report if the order was an ex parte TPO. If you give us a proper 14 day termination notice based on a family violence order prior to taking possession of the apartment you are not liable for payment of any rent or other fees, and the Lease Contract will terminate.

**24. MILITARY TRANSFER AND LEASE TERMINATIONS.**
A resident (including a resident's spouse) who is a service member on active duty or is called to active duty in the regular or the reserve component of the U.S. Armed Forces, U.S. Coast Guard or National Guard, shall have the right to end this Apartment Rental Contract early by giving 30 days written notice, paying all rent due through the notice date, and providing a copy of the official military orders or written verification signed by the service member's commanding officer or by providing base housing orders as provided in OCGA Section 44-7-22, if the service member is:

(1) Ordered to federal duty for a period of 90 days or longer;

(2) Receives a permanent change of station orders to move at least 35 miles away from the rental housing;

(3) Is released from active duty after leasing housing and must move 35 miles or more away from the service member's home of record prior to entering active duty;

(4) After entering into this rental agreement, the service member becomes eligible to live in government quarters or the failure to move to government quarters will result in a forfeiture of the member's basic allowance for housing;

(5) Receives temporary duty orders or temporary change of station orders or state active duty orders for a period exceeding 60 days that is at least 35 miles away from the location of the rental housing; or

(6) Receives orders after signing the lease but before taking possession of the rental housing.

After you deliver to us your written termination notice, the Lease Contract will be terminated under this military clause 30 days after the date on which your next rental payment is due. You must furnish us a copy of your military orders, such as permanent change-of-station orders, call-up orders, or deployment orders or written notification from your commanding officer. Military permission for base housing does not constitute change-of-station order. After you move out, we'll return your security deposit, less lawful deductions. For the purposes of this Lease Contract, orders described in (2) above will only release the resident who qualifies under (1) and (2) above and receives the orders during the Lease Contract term and such resident's spouse or legal dependents living in the resident's household. A co-resident who is not your spouse or dependent cannot terminate under this military clause. Unless you state otherwise in paragraph 10 (Special Provisions), you represent when signing this Lease Contract that: (1) you do not already have deployment or change-of-station orders; (2) you will not be retiring from the military during the Lease Contract term; and (3) the term of your enlistment or obligation will not end before the Lease Contract term ends. Even if you are entitled to terminate this Lease Contract under this paragraph, liquidated damages for making a false representation of the above will be the amount of unpaid rent for the remainder of the lease term when and if you move out, less rents from others received in mitigation under paragraph 33 (Default by Resident). You must immediately notify us if you are called to active duty or receive deployment or permanent change-of-station orders.

**25. RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors and carbon monoxide detectors, keyed deadbolt locks, keyless bolting devices, window latches, and access control devices.

**Smoke Detectors and Carbon Monoxide Detectors.** We'll furnish smoke detectors and carbon monoxide detectors only if required by statute or ordinance, and we'll test them and provide working batteries when you first take possession. After that, you must test the smoke detectors and the carbon monoxide detectors on a regular basis, and must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report smoke detector and carbon monoxide detector malfunctions to us. Neither you nor others may disable neither the smoke detectors nor the carbon monoxide detectors. If you damage or disable the smoke detector or carbon monoxide detector or remove a battery without replacing it with a working battery, you will be liable to us for $100 plus one month's rent, actual damages, and attorney's fees. If you disable or damage the smoke detector or carbon monoxide detector, or fail to replace a dead battery or report malfunctions to us, you will be liable to us and others for any loss, damage, or fines from fire, smoke, or water. We both must comply with any local smoke detector and carbon monoxide detector ordinances.

**Casualty Loss.** We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, interruption of utilities, theft, or vandalism unless otherwise required by law. We have no duty to remove any ice, sleet, or snow but may remove any amount with or without notice. During freezing weather, you must ensure that the temperature in the apartment is sufficient to make sure that the pipes do not freeze (the appropriate temperature will depend upon weather conditions and the size and layout of your unit). If the pipes freeze or any other damage is caused by your failure to properly maintain the heat in your apartment, you'll be liable for damage to our and other's property. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for those services.

**Crime or Emergency.** Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity, or other emergency involving imminent harm. You should then contact our representative. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security. If we provide any access control devices or security measures upon the property, they are not a guarantee to prevent crime or to reduce the risk of crime on the property. You agree that no access control or security measures

can eliminate all crime and that you will not rely upon any provided access control or security measures as a warranty or guarantee of any kind. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You also must furnish us with the law-enforcement agency's incident report number upon request.

**26. CONDITION OF THE PREMISES AND ALTERATIONS.** You accept the apartment, fixtures, and furniture as is. We disclaim all implied warranties. You'll be given an Inventory and Condition form on or before move-in. Prior to move-in, you must sign and note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors and carbon monoxide detectors, furniture, telephone and cable TV wiring, screens, locks, and access control devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

**27. REQUESTS, REPAIRS, AND MALFUNCTIONS.** IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST—FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS—IT MUST BE SUBMITTED THROUGH EITHER THE ONLINE RESIDENT/MAINTENANCE PORTAL, OR SIGNED AND IN WRITING AND DELIVERED TO OUR DESIGNATED REPRESENTATIVE (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections. Rent will not abate in whole or in part.

If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate this Lease Contract within a reasonable time by giving you written notice. If the Lease Contract is so terminated, we'll refund prorated rent and all deposits, less lawful deductions.

**28. ANIMALS.** Unless otherwise provided under federal, state, or local law, no animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the Apartment or Apartment Community unless we've so authorized in writing. You must remove an illegal or unauthorized animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. If we allow an animal as a pet, you must execute a separate animal addendum which may require additional deposits, rents, fees or other charges. An animal deposit is considered a general security deposit. We will authorize an assistance animal for a disabled person. When allowed by applicable laws, before we authorize an assistance animal, if the disability is not readily apparent, we may require a written statement from a qualified professional verifying the disability-related need for the assistance animal. If we authorize an assistance animal, we may require you to execute a separate animal and/or assistance animal addendum. Animal deposits, additional rents, fees or other charges will not be required for an assistance animal needed due to disability, including an emotional support or service animal, as authorized under federal, state, or local law. You must not feed stray or wild animals.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules. We may remove an unauthorized animal by (1) leaving, in a conspicuous place in the apartment, a 24-hour written notice of intent to remove the animal, and (2) following the procedures of paragraph 29 (When We May Enter). We may keep or kennel the animal or turn it over to a humane society or local authority. When keeping or kenneling an animal, we won't be liable for loss, harm, sickness, or death of the animal unless due to our negligence. We'll return the animal to you upon request if it has not already been turned over to a humane society or local authority. You must pay for the animal's reasonable care and kenneling charges. We have no lien on the animal for any purpose.

**29. WHEN WE MAY ENTER.** If you or any guest or occupant is present, then repairers, servicers, contractors, our representatives or other persons listed in (2) below may peacefully enter the apartment at reasonable times for the purposes listed in (2) below. If nobody is in the apartment, such persons may enter peacefully and at reasonable times by duplicate or master key (or by breaking a window or other means when necessary in emergencies) if:

(1) written notice of the entry is left in a conspicuous place in the apartment immediately after the entry; and

(2) entry is for: responding to your request; making repairs or replacements; estimating repair or refurbishing costs; performing pest control; doing preventive maintenance; changing filters; testing or replacing smoke-detector and carbon monoxide detector batteries; retrieving unreturned tools, equipment or appliances; preventing waste of utilities; exercising our contractual lien; leaving notices; delivering, installing, reconnecting, or replacing appliances, furniture, equipment, or access control devices; removing or rekeying unauthorized access control devices; removing unauthorized window coverings; stopping excessive noise; removing health or safety hazards (including hazardous materials), or items prohibited under our rules; removing perishable foodstuffs if your electricity is disconnected; removing unauthorized animals; cutting off electricity according to statute; retrieving property owned or leased by former residents; inspecting when immediate danger to person or property is reasonably suspected; allowing persons to enter as you authorized in your rental application (if you die, are incarcerated, etc.); allowing entry by a law officer with a search or arrest warrant, or in hot pursuit; showing apartment to prospective residents (after move-out or vacate notice has been given); or showing apartment to government inspectors for the limited purpose of determining housing and fire ordinance compliance by us and to lenders, appraisers, contractors, prospective buyers, or insurance agents.

**30. JOINT AND SEVERAL RESPONSIBILITY.** Each resident is jointly and severally liable for all Lease Contract obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of tenancy termination, repair requests, and entry permissions) constitute notice from all residents. In eviction suits, each resident is considered the agent of all other residents in the apartment for service of process. Security-deposit refunds and deduction itemizations of multiple residents will comply with paragraph 51 (Deposit Return, Surrender, and Abandonment).

## Replacements

**31. REPLACEMENTS AND SUBLETTING.** Replacing a resident, subletting, assignment, or granting a right or license to occupy is allowed only when we expressly consent in writing. If departing or remaining residents find a replacement resident acceptable to us before moving out and we expressly consent, in writing, to the replacement, subletting, assignment, or granting a right or any license to occupy, then:

(1) a reletting charge *will not* be due;
(2) a reasonable administrative (paperwork) and/or transfer fee *will* be due, and a rekeying fee *will* be due if rekeying is requested or required; and
(3) the departing and remaining residents will remain liable for all lease obligations for the rest of the original lease term.

**Procedures for Replacement.** If we approve a replacement resident, then, at our option: (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit; *or* (2) the remaining and replacement residents must sign an entirely new Lease Contract. Unless we agree otherwise in writing, your security deposit will automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right to occupancy or a security deposit refund, but will remain liable for the remainder of the original Lease Contract term unless we agree otherwise in writing—even if a new Lease Contract is signed.

## Responsibilities of Owner and Resident

**32. RESPONSIBILITIES OF OWNER.** We'll act with customary diligence to:

(1) keep common areas reasonably clean, subject to paragraph 26 (Condition of the Premises and Alterations);
(2) maintain fixtures, furniture, hot water, heating and A/C equipment;
(3) comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing; and
(4) make all reasonable repairs, subject to your obligation to pay for damages for which you are liable.

If we violate any of the above, you may terminate your tenancy and exercise other remedies under state statute only as follows:

(a) you must make a written request for repair or remedy of the condition, and all rent must be current at the time;
(b) after receiving the request, we have a reasonable time to repair, considering the nature of the problem and the reasonable availability of materials, labor, and utilities;
(c) if we haven't diligently tried to repair within a reasonable time, you must then give us written notice of intent to terminate your tenancy unless the repair is made within 7 days;
(d) if repair hasn't been made within 7 days, you may terminate your tenancy and exercise other statutory remedies. Security deposits and prorated rent will be refunded as required by law;
(e) you may terminate your tenancy under this provision only if the repair or condition is so material and substantial as to render the apartment unfit for habitation; and
(f) you must move out of the apartment on or before the termination date specified in your notice.

**33. DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates the apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (3) you abandon the apartment; (4) you give incorrect, misleading, or false answers in a rental application; (5) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (6) any illegal drugs or drug paraphernalia are found in your apartment; (7) you or your occupants or guests sell, distribute, solicit, possess, or control any illegal drugs or drug paraphernalia in your vehicle, your apartment, anywhere in the apartment community, or on your person; (8) you or any guest or occupant engages in any of the prohibited conduct described in paragraph 21 (Prohibited Conduct); or (9) you or any occupant, in bad faith, makes an invalid complaint to an official or employee of a utility company or the government.

**Eviction.** If you default, we may end your right of occupancy by giving you a 24-hour written notice to vacate. Notice may be by: (1) regular mail; (2) certified mail, return receipt requested; (3) personal delivery to any resident; (4) personal delivery at the apartment to any occupant over 16 years old; (5) affixing the notice to the inside of the apartment's main entry door. Termination of your possession rights or subsequent reletting doesn't release you from liability for future rent or other lease obligations.

**Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then: (1) the rental value of your apartment while you hold over is due in advance on a monthly basis and shall be delinquent without notice or demand; (2) the rental value for the holdover period will be increased by 25% over the then-existing rent, without notice; (3) you'll be liable to us for all rent for the full term of the previously signed Lease Contract of a new resident who can't occupy because of the holdover; and (4) at our option, we may extend the lease term--for up to one month from the date of notice of lease extension--by delivering written notice to you or your apartment while you continue to hold over.

**Other Remedies.** We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amounts stated to be rental discounts in paragraph 10 (Special Provisions), in addition to other sums due. Upon your default, we have all other legal remedies, including tenancy termination. The prevailing party may recover from the non-prevailing party 15% attorney's fees and all other litigation costs. Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs). All unpaid amounts bear 16% interest per year from due date, compounded annually. You must pay all collection-agency fees if you fail to pay all sums due within 10 days after we mail you a letter demanding payment and stating that collection agency fees will be added if you don't pay all sums by that deadline.

**Remedies Cumulative.** Any remedies set forth herein shall be cumulative, in addition to, and not in limitation of, any other remedies available to Landlord under any applicable law.

**Mitigation of Damages.** If you move out early, you'll be subject to paragraph 11 (Early Move-Out) and all other remedies. We'll exercise customary diligence to relet and mitigate damages. We'll credit all subsequent rent that we actually receive from subsequent residents against your liability for past-due and future rent and other sums due.

## General Clauses

**34. ENTIRE AGREEMENT.** Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us.

**35. NO AUTHORITY TO AMEND UNLESS IN WRITING.** Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing.

**36. NO WAIVER.** No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, acceleration, liens, or other rights isn't a waiver under any circumstances.

**37. NOTICE.** Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo, letter or fax that was given. Fax signatures are binding. All notices must be signed.

**38. MISCELLANEOUS.**

A. Exercising one remedy won't constitute an election or waiver of other remedies.

B. Unless prohibited by law or the respective insurance policies, insurance subrogation is waived by all parties.

C. All remedies are cumulative.

D. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf.

E. This Lease Contract binds subsequent owners.

F. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract.

G. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies.

H. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option.

I. All Lease Contract obligations must be performed in the county where the apartment is located.

J. All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

K. Resident agrees and understands that the terms and conditions of this agreement, including any and all rules and regulations or other documents or policies referred to herein, will be construed and applied under and according to the laws of the state of Georgia.

**39. WAIVER OF JURY TRIAL.** To minimize legal expenses and, to the extent allowed by law, you and we agree that a trial of any lawsuit based on statute, common law, and/or related to this Lease Contract shall be to a judge and not a jury.

**40. LIMITATIONS ON ACTIONS.** To the extent allowed by law, Resident also agrees and understands that any legal action against Management or Owner must be instituted within one year of the date any claim or cause of action arises and that any action filed after one year from such date shall be time barred as a matter of law.

**41. CONTACTING YOU.** By signing this lease, you are agreeing that we, our representative(s) or agent(s) may contact you. You agree that we may contact you using any contact information relating to your lease including any number (i) you have provided to us (ii) from which you called us, or (iii) which we obtained and through which we reasonably believe we can reach you. You agree we may use any means to contact you. This may include calls made to your cellular telephone using an automatic telephone dialing system, artificial or prerecorded voice messages, text messages, mail, e-mail, and calls to your phone or Voice over Internet Protocol (VoIP) service, or any other data or voice transmission technology. You agree to promptly notify us if you change any contact information you provide to us. You are responsible for any service provider charges as a result of us contacting you.

**42. OBLIGATION TO VACATE.** If we provide you with a notice to vacate, or if you provide us with a written notice to vacate or intent to move-out in accordance with paragraph 3 (Lease Term), and we accept such written notice, then you are required to vacate the premises and remove all of your personal property therefrom at the expiration of the Lease term without further notice or demand from us.

Although the property may currently be providing cable on a bulk basis to the resident, the property may, with 30 days notice to the resident, cease providing cable and the resident will contract directly with the cable provider for such services.

You affirmatively state that you are not a criminal sex offender.

**43. FORCE MAJEURE:** If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

**44. PAYMENTS.** Payment of all sums is an independent covenant. At our option and without notice, we may apply money received (other than sale proceeds under paragraph 13 (Contractual Lien and Property Left in Apartment) or utility payments subject to governmental regulations) first to any of your unpaid obligations, then to current rent—regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments.

**45. ASSOCIATION MEMBERSHIP.** We represent that either: (1) we or; (2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local apartment (multi-housing) associations for the area where the apartment is located.

## When Moving Out

**46. MOVE-OUT NOTICE.** Before moving out, either at the end of the lease term, any extension of the lease term, or prior to the end of the lease term, you must give our representative advance written notice of your intention to vacate as required by paragraph 3 (Lease Term). If you move out prior to the end of the lease term, your notice does not act as a release of liability for the full term of the Lease Contract. You will still be liable for the entire Lease Contract term if you move out early (see paragraph 23 - Release of Resident) except if you are able to terminate the Lease Contract under the statutory rights explained under paragraph 11 (Early Move-Out), paragraph 23 (Release of Resident), and paragraph 24 (Military Transfer and Lease Termination). All notices to vacate must be in writing and must provide the date by which you intend to vacate. If the notice does not comply with the time requirements of paragraph 3 (Lease Term), even if you move by the last date in the lease term, you will be responsible for an additional month's rent. If you fail to vacate by the date set forth in your notice, your notice is void and you must submit a new written notice. If you fail to provide proper notice and vacate, you will be responsible for an additional month's rent. The one month's rent represents the period that the apartment sits vacant and constitutes actual damages for loss of rent.

**47. MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the lease term or renewal period ends unless all rent for the entire lease term or renewal period is paid in full. Early move-out may result in reletting charges and liability for future rent under paragraphs 11 (Early Move-Out) and 33 (Default by Resident). You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must vacate the apartment before the 30-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**48. CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

**49. MOVE-OUT INSPECTION.** Within 3 business days after the Lease Contract terminates and you vacate the premises or within 3 business days after you surrender and we accept back possession of the apartment - whichever occurs first - we'll inspect your unit and prepare a comprehensive list of damage done during your occupancy (over and above normal wear) and the estimated dollar value of the damage.

Upon your request within 5 business days after the Lease Contract terminates and you vacate the premises or upon your request within 5 business days after you surrender and we accept back possession of the apartment - whichever occurs first - you have the right to inspect the premises and inspect our list of damages and estimated dollar value of the damages.

If you are present with us at the time of the inspection we will both sign the damage list which will become conclusive evidence of the accuracy of the list. If you refuse to sign the list, you must state specifically in writing the items on the list with which you object or dissent. You may note your objections or dissent on the list we prepare, or you may submit a separate list of your objections and dissent to our list.

Within 30 days after obtaining possession of your unit once the Lease Contract terminates and you vacate the premises or within 30 days after you surrender and we accept possession of the premises - whichever occurs first - we will either: 1) return your full security

deposit; or 2) return the remaining portion (if any) of your security deposit less any amounts we deducted for damages exceeding wear and tear, unpaid rent, or other charges or fees you owe us under the Lease Contract. If we do not return your full security deposit we will send you the remaining balance of the deposit (if any) along with a copy of the damage list and estimated value from our inspection.

If you vacate or surrender the premises without notifying us, we will inspect the premises and compile the list of damages and estimated value within a reasonable time after we discover you surrendered the premises or vacated.

If you are present at the move out inspection after vacating and sign the final damage list or if you are present at the move out inspection and do not object or dissent in writing to the items on the list, you are not entitled to recover your security deposit or other damages under OCGA 44-7-35.

If you did not request a copy of the final damage list and you did not inspect the premises after vacating you still will have the right to dispute the damages we assessed against your security deposit.

If you did not request a copy of the final damage list and were not present for our inspection after vacating you still will have the right to dispute the damages we assessed against your security deposit.

**50. SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You'll be liable for the following charges, if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing dead or missing smoke-detector or carbon monoxide detectors batteries; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone or TV cable services or rental items (if you so request or have moved out); trips to open the apartment when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized access control devices or alarm systems; agreed reletting charges; packing, removing, or storing property removed or stored under paragraph 13 (Contractual Lien and Property Left in Apartment); removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; animal-related charges under paragraph 28 (Animals); government fees or fines against us for violation (by you, your occupants, or guests) of local ordinances relating to smoke detectors and carbon monoxide detectors, false alarms, recycling, or other matters; late-payment and returned-check charges; a charge (not to exceed $100) for owner/manager's time and inconvenience in our lawful removal of an animal; attorney's fees, court costs, and filing fees actually paid or incurred with respect to an eviction proceeding, your default, or as otherwise provided by law or in this Lease Contract; and other sums due under this Lease Contract.

You'll be liable to us for: (1) charges for replacing all keys and access devices referenced in paragraph 5 (Keys) if you fail to return them on or before your actual move-out date; (2) all delinquent and future rent if you have violated paragraph 33 (Default by Resident); and (3) a reletting fee if you have violated paragraph 11 (Early Move-Out).

**51. DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.**
**Deposit Return and Forwarding Address.** You are required to provide us written notice of your forwarding address, on or before termination of this Lease Contract. We'll mail you, to the forwarding address you provide, your security deposit refund (less lawful deductions) and an itemized accounting of any deductions within the time provided by law to either the forwarding address if notice is provided, or if unknown, to the last known address.

**Surrender.** You have surrendered the apartment when: (1) the move-out date has passed and no one is living in the apartment in our reasonable judgment; or (2) all apartment keys and access devices listed in paragraph 5 (Keys) have been turned in where rent is paid—whichever date occurs first.

**Abandonment.** You have abandoned the apartment when all of the following have occurred: (1) everyone appears to have moved out with the intention to give up all rights to occupy or use the apartment in our reasonable judgment; (2) you've been in default for non-payment of rent for 5 consecutive days or water, gas, or electric service for the apartment that we are not responsible for paying for under paragraph 7 (Utilities) has been terminated; and (3) you've not responded for 2 days to our notice left on the inside of the main entry door, stating that we consider the apartment abandoned.

Surrender, abandonment, and judicial eviction end your right of possession for all purposes and gives us the immediate right to: clean up, make repairs in, and relet the apartment; determine any security deposit deductions; and remove property left in the apartment. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (paragraph 13 - Contractual Lien and Property Left in Apartment), but do not affect our mitigation obligations (paragraph 33 - Default by Resident).

## Severability, Originals and Attachments, and Signatures

**52. SEVERABILITY.** If any provision of this Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Lease Contract. The court shall interpret the lease and provisions herein in a manner such as to uphold the valid portions of this Lease Contract while preserving the intent of the parties.

**53. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, with original signatures. We will provide you with a copy of the Lease Contract. Your copy of the Lease Contract may be in paper format, in an electronic format at your request, or sent via e-mail if we have communicated by e-mail about this Lease. Our rules and community policies, if any, will be attached to the Lease Contract and provided to you at signing. When an Inventory and Condition form is completed, you should retain a copy, and we should retain a copy. Any addenda or amendments you sign as a part of executing this Lease Contract are binding and hereby incorporated into and made part of the Lease Contract between you and us. This lease is the entire agreement between you and us. You acknowledge that you are NOT relying on any oral representations. A copy or scan of this Lease Contract and related addenda, amendments, and agreements may be used for any purpose and shall be treated as an original.

**54. DISCLOSURE NOTICE.** Name and address of the company or party authorized to manage the apartment community: ______________
______________
______________
______________
______________

Name and address of the company or party authorized to receive notices or lawsuits: ______________
______________
______________
______________
______________

Management's corporate name and license number as required by the rules of the Georgia Real Estate Commission (Ga. R. & Reg. 520-1-.10 are ______________
______________
______________

(Corporate Name of Licensed Managing Agent) and ______________
______________

(GREC corporate license number of Managing Agent).

> You are legally bound by this document.
> Read it carefully before signing.

| Resident or Residents *(all sign below)* | Date Signed |
|---|---|
| ______________ | ______ |
| ______________ | ______ |
| ______________ | ______ |
| ______________ | ______ |
| ______________ | ______ |
| ______________ | ______ |

| Owner or Owner's Representative *(signing on behalf of owner)* | Date Signed |
|---|---|
| ______________ | ______ |

© 2022, National Apartment Association, Inc. - 5/2022, Georgia

**Name, address and phone number of managing agent for the property for notice purposes. This person or entity is authorized to receive services of process and to manage the property.**

Greystar
1545 Peachtree Street NE, Suite 700
Atlanta, GA 30309

**Name and address of locator service** ***(if applicable)***

SPECIAL PROVISIONS (CONTINUED FROM PAGE 2) Management does not offer after hours lockout service. Evictions: Filling fee of $200 will be charged on the 10th of each month. Additional charges may apply for other legal fees incurred. Upon the 3rd filling, we will not accept rent and you will be asked to move immediately. All residents are required to purchase & maintain renter's insurance policy throughout lease term.

Equal Housing Opportunity Provider



HEAD OF HOUSEHOLD
Juliette Loure
SIGNED 11/14/2022 AT 12:02PM EST

DOCUMENT SIGNER
Brenda Rodriguez
SIGNED 12/22/2022 AT 10:44AM EST

23D35778
MAGISTRATE COURT OF DEKALB COUNTY, GA
12/28/2023 9:31 AM**E-FILED**
23D35778
Clerk Kim Brock

1031928

**MAGISTRATE COURT OF DEKALB COUNTY**

DeKalb Courthouse - Civil Division
556 N. McDonough Street, Room 200
Decatur, GA 30030
404-371-2261

CREC McDowell Somerset, JV d/b/a Somerset at the Crossing
100 SUMMERWALK PARKWAY,
TUCKER GA 30084
770-938-4211 DispoCourt@pdqservices.net
PLAINTIFF'S NAME/ADDRESS/PHONE/EMAIL

CASE # ____________

V. JULIETTE LOWE and all others

1310 SUMMERWALK PARKWAY
TUCKER GA 30084
DEFENDANT'S NAME & ADDRESS

J. Mike Williams #765209
2970 Clairmont Road, Suite 220
Atlanta GA 30329
PLAINTIFF'S ATTORNEY NAME/ADDRESS/PHONE/EMAIL

1. Defendant is in possession as tenant of the premises at the address in DeKalb County as stated above.
2. Affiant is the ☐ Owner ☐ Attorney ☒ Agent ☐ Tenant and owner of said premises.
3. Defendant ☒ fails to pay the rent which is now past due;
   ☐ holds the premises over and beyond the term for which they were rented or leased to him;
   ☐ is a tenant at sufferance;
   ☐ other grounds: ____________
4. Plaintiff desires and has demanded possession of the premises.
5. Defendant has failed and refused to deliver possession of the premises.

WHEREFORE, Plaintiff DEMANDS
(a) Possession of the premises.
(b) Past due rent of $ 1506.00 for the month(s) December 2023
(c) Rent accruing up to the date of judgement of vacancy at the rate of $ 1506.00 per Monthly
(d) Other: 100.00 LATE Fees 80.56 Utilities 52.00 other fees 0.

*By affixing this electronic verification, oath, or affidavit to the pleading(s) submitted to the court and attaching my electronic signature hereon, I do hereby swear or affirm that the statements set forth in the above pleading(s) are true and correct.*

/s/ Kadaesha Brooks — 12/28/2023 — 770-938-4211 DispoCourt@pdqservices.net
PLAINTIFF(S) or AFFIANT — DATE — PHONE NUMBER / EMAIL ADDRESS

## SUMMONS

TO THE MARSHAL of the State Court of DeKalb County or his lawful deputies, GREETINGS:

The defendant herein is hereby commanded and required personally or by attorney to file with the Clerk of the Magistrate Court of DeKalb County, 2nd Floor, Suite 200, Administrative Tower, DeKalb County Courthouse, 556 N. McDonough St., Decatur, Georgia within seven (7) days from the date of service of the within affidavit and summons (or on the first business day thereafter if the seventh day falls on Saturday, Sunday or legal holiday) then and there to answer said affidavit either online, in writing or orally (orally means in front of a deputy clerk). If no Answer is made, a writ of possession shall issue instanter. WITNESS the Honorable Chief Judge of said Court. The above affidavit was sworn to and subscribed before the undersigned Deputy Clerk by affiant as provided by O.C.G.A. § 44-7-50 and summons issues pursuant thereto.

This ________ day of ____________, ______

Clerk Kim Brock 12/28/2023 9:32 AM
DEPUTY CLERK, Magistrate Court of DeKalb County

## PRIVATE PROCESS SERVER AFFIDAVIT OF SERVICE

I have served the foregoing Affidavit and Summons on the Defendant(s) by delivering a copy of same:
☐PERSONALLY ☐ DEFENDANT NOT FOUND AT WITHIN ADDRESS ON SAID SUMMONS AND AFFIDAVIT
☐NOTORIOUSLY (NAME) ____________ Age ____ Wt. ____ Ht. ____
☐TACK & MAIL. Posting a copy to the door of the premises and depositing a copy in the U.S. Mail, First Class in an envelope properly addressed after attempting personal service. Said copy containing notice to the Defendant(s) to answer at the hour and place in said summons.

DATE OF SERVICE: ____________ DEFENDANT TO ANSWER ON OR BEFORE: ____________

PROFESSIONAL PROCESS SERVER — NOTARY

## ANSWER

To file your answer online visit www.AnswerDispo.com and enter your case number. All Answers must be electronically filed by 11:59PM on or before the last day to answer this summons. A service charge applies for online answers. No service charge applies to answers made written or orally at the courthouse.

VMC

Juliette Lowe
3104 E Emma
Tampa, FL 33610

Clerk's Office
United States District Court
For the Northern District of
Georgia

75 Ted Turner Drive, SW
Rm. 2211
Atlanta, GA 30303

case number: 1:2025cv04343