FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta
APR 29 2026
KEVIN P WEIMER, Clerk
By: Deputy Clerk
VMC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**JULIETTE LOWE,**
**Plaintiff,**
**v.**
**GREYSTAR MANAGEMENT SERVICES, LP,**
**SOMERSET AT THE CROSSINGS APARTMENTS,**
**Defendants.**

**Civil Action No: 1:2025cv04343**

# FIRST AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND JURY DEMAND

Plaintiff Juliette Lowe, proceeding pro se, files this First Amended Complaint against Defendants Greystar Management Services, LP and Somerset at the Crossings Apartments and alleges as follows:

## I. NATURE OF THE ACTION

1. This is a federal fair housing action arising from Defendants discriminatory and retaliatory denial of Plaintiff's transfer to a three-bedroom apartment unit at Somerset at the Crossings Apartments.

2. This case concerns Defendants decision to make Unit 1402 unavailable to Plaintiff after Defendants had already created transfer documents, issued a move-in statement and accepted a $400 transfer fee from Plaintiff.
3. Defendants later gave shifting and inconsistent explanations for denying Plaintiff's transfer, including that no onsite transfers were available, that Unit 1402 had already been leased, that Plaintiff had not completed the transfer process and that no three-bedroom units were available.
4. Defendants own records and discovery responses contradict those explanations.
5. Defendants admitted that Unit 1402 was not pre-leased or reserved when Plaintiff requested it, yet another applicant of a different race and/or national origin was permitted to proceed with Unit 1402 during the same period, was approved one day after Plaintiff's transfer was cancelled and began a lease shortly thereafter.
6. This action is brought under the Fair Housing Act, 42 U.S.C. §§ 3601–3619, and 42 U.S.C. § 1982.

## II. JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law.
2. This Court also has jurisdiction under 28 U.S.C. § 1343 because Plaintiff brings civil rights claims under federal law.
3. This Court has jurisdiction under 42 U.S.C. § 3613(a), which permits an aggrieved person to commence a civil action for violations of the Fair Housing Act.
4. The Fair Housing Act prohibits making housing unavailable because of race, color, religion, sex, familial status, or national origin, and prohibits discrimination in terms, conditions, privileges, services, or facilities connected to rental housing.
5. The Fair Housing Act also prohibits coercion, intimidation, threats, or interference with a person's exercise or enjoyment of rights protected under the Act.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) because the property is located in this District and the events giving rise to this action occurred in this District.

## III. PARTIES

1. Plaintiff Juliette Lowe is a Black woman and former tenant of Somerset at the Crossings Apartments.
2. Plaintiff formerly resided in Unit 1310 at Somerset at the Crossings Apartments, located at 100 Summerwalk Parkway, Tucker, Georgia.
3. Defendant Greystar Management Services, LP is a property management company doing business in Georgia and managing residential apartment properties, including Somerset at the Crossings Apartments.
4. Defendant Somerset at the Crossings Apartments is a residential apartment complex located at 100 Summerwalk Parkway, Tucker, Georgia.
5. At all relevant times, Defendants acted through their employees, agents, leasing staff, managers, assistant managers, regional managers, attorneys, representatives, and property management systems.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Tenancy and Need for a Three-Bedroom Unit

1. Plaintiff was a tenant at Somerset at the Crossings Apartments.
2. Plaintiff resided in Unit 1310.
3. Plaintiff sought to transfer to a three-bedroom unit because her household circumstances had changed.

4. Plaintiff's teenage daughter needed additional space and a separate bathroom.
5. Plaintiff also needed additional space due to work and household needs.
6. Plaintiff communicated her need for a larger unit to Defendants.
7. Defendants invited Plaintiff to pursue a transfer to a three-bedroom unit.
8. Plaintiff was eligible and qualified to pursue the transfer based on Defendants' own conduct, including creating a transfer packet, generating a move-in statement, accepting the transfer fee, and processing Plaintiff for Unit 1402.

**B. Defendants Processed Plaintiff's Transfer for Unit 1402**

9. On or about July 16, 2024, Plaintiff sought transfer from Unit 1310 to Unit 1402, a three-bedroom unit at Somerset at the Crossings.
10. Defendants' own activity records reflect that a transfer packet was created for Plaintiff on July 16, 2024.
11. Defendants' own activity records reflect that a move-in statement was generated and sent regarding Plaintiff's transfer.
12. The transfer documentation identified the new unit, projected move-in terms, rental charges, and related move-in amounts.
13. Plaintiff paid the required $400 transfer fee on or about July 17, 2024.
14. Defendants' own stated transfer procedure provides that a paid transfer fee removes the unit from available status to leased status.
15. Plaintiff reasonably believed that Defendants had approved or materially advanced her transfer.
16. Plaintiff relied on Defendants' conduct and began preparing to relocate to Unit 1402.

**C. Defendants Cancelled Plaintiff's Transfer and Gave Inconsistent Reasons**

17. On or about July 25, 2024, Defendants cancelled or reversed Plaintiff's transfer.
18. Defendants entered an internal note stating: "NO ONSITE TRANSFER AT THE TIME PER MANAGEMENT. UNIT UNAVAILABLE."
19. Defendants later represented that Plaintiff's transfer was denied because the unit had already been leased.
20. Defendants also represented that no official approval had been given.
21. Defendants also represented that Plaintiff had not completed required steps.
22. Defendants also represented that onsite transfers were unavailable.
23. Defendants also represented that no three-bedroom units were available.
24. These reasons are materially inconsistent with each other and with Defendants' records.

**D. Defendants Admit Unit 1402 Was Not Pre-Leased or Reserved When Plaintiff Requested It**

25. In discovery, Defendants admitted that when Plaintiff requested Unit 1402, the unit was not pre-leased or reserved by anyone.
26. Defendants stated that current residents of Unit 1402 were being evicted.
27. Defendants therefore knew Unit 1402 was an available or upcoming unit capable of being pre-leased, assigned, or processed.
28. Defendants' later position that Plaintiff's transfer failed because the unit had already been leased conflicts with Defendants' admission that Unit 1402 was not pre-leased or reserved when Plaintiff requested it.

**E. Comparator Applicant A Was Processed for the Same Unit During the Same Timeline**

29. Defendants identified the applicant who ultimately occupied Unit 1402.
30. To protect nonparty privacy, Plaintiff refers to that applicant as "Comparator Applicant A."
31. Defendants admitted that Comparator Applicant A started an application for Unit 1402 on July 16, 2024.
32. Defendants admitted that Comparator Applicant A completed the application online the same day.
33. Defendants admitted that Comparator Applicant A was approved on July 26, 2024.
34. Defendants admitted that Comparator Applicant A's lease began on or about August 14, 2024.
35. Plaintiff's transfer documents were created on July 16, 2024.
36. Plaintiff's transfer was cancelled on July 25, 2024.
37. Comparator Applicant A was approved on July 26, 2024.
38. The timing supports a reasonable inference that Plaintiff was removed from consideration for Unit 1402 immediately before Comparator Applicant A was approved.
39. Comparator Applicant A is of a different race and/or national origin than Plaintiff.
40. Defendants permitted Comparator Applicant A to proceed with Unit 1402 while denying Plaintiff the same housing opportunity.
41. Defendants' records further indicate a discrepancy where multiple prospects and residents were told to apply for the same unit.
42. The same-unit, same-timeline treatment supports an inference of discriminatory treatment and pretext.

**F. Defendants' "No Onsite Transfers" Explanation Is Contradicted by Their Transfer Records**

43. On August 9, 2024, Defendants told Plaintiff that, "per corporate", onsite transfers were not being done at the time.
44. Defendants also told Plaintiff that she could continue to inquire or that the office could contact her when transfers were approved again for residents.
45. Defendants' own resident activity records show that resident transfers occurred throughout 2024.
46. Defendants' records show resident transfers before and after Plaintiff's transfer request.
47. Defendants' records show that transfers remained an active property function.
48. Defendants' own records therefore undermine the claimed blanket policy that onsite transfers were unavailable.
49. Defendants' transfer records support the inference that transfer decisions remained discretionary and were selectively applied.

**G. Defendants Later Falsely Represented That No Three-Bedroom Units Were Available**

50. On September 13, 2024, Plaintiff's attorney demanded that Defendants honor Plaintiff's transfer to Unit 1402 or provide a similarly situated three-bedroom unit.
51. Defendants' attorney responded that Defendants could not accept the offer because "there are no 3-bedroom apartments available at this time."
52. That representation was false or materially misleading.
53. Plaintiff possessed time-stamped screenshots showing three-bedroom units available on Defendants' own website.
54. Defendants' own records show that three-bedroom unit activity and leasing activity existed during the same general period.
55. Defendants' own records show that Unit 1402 had been processed for Comparator Applicant A during the same period.

56. Defendants' false statement regarding three-bedroom availability interfered with Plaintiff's ability to obtain housing and discouraged enforcement of her transfer rights.

## H. Defendants' Renewal Pressure and Market-Rate Rent Followed the Transfer Revocation

57. After Defendants revoked Plaintiff's transfer, Defendants pressured Plaintiff to sign renewal documents or face month-to-month market rent.
58. Defendants gave Plaintiff an urgent deadline to renew.
59. Plaintiff asked whether tenants would be allowed to transfer units due to changes in household circumstances.
60. Defendants responded that onsite transfers were unavailable at that time.
61. Defendants informed Plaintiff that her specific month-to-month rate would be $2,469.
62. Defendants' own account records later show a month-to-month premium imposed on Plaintiff's account.
63. Plaintiff alleges this conduct was part of Defendants' effort to force her either to remain in her existing unit under less favorable terms or to vacate without receiving the three-bedroom transfer she had been led to expect.

## I. The Prior Dispossessory Filing Continued to Harm Plaintiff's Housing Access

64. In December 2023, Defendants filed a dispossessory action against Plaintiff.
65. Defendants later dismissed the dispossessory action.
66. Plaintiff was not served with the dispossessory filing before discovering it later through housing screening issues.

67. In discovery, Plaintiff requested all documents relating to the eviction filing, including internal approval records, notices, and service documentation.
68. Defendants represented that eviction-related documents had been produced.
69. Defendants have not identified any document showing that Plaintiff was served with a pre-filing demand for possession or that service was completed before the filing harmed Plaintiff's rental history.
70. The dismissed dispossessory filing continued to appear in housing records and impaired Plaintiff's ability to obtain safe and stable housing.
71. Defendants' use or failure to correct the dismissed dispossessory record contributed to Plaintiff's displacement and housing instability.
72. Plaintiff pleads the dispossessory filing as part of the continuing harm, retaliation, and interference with housing access, not as a standalone constitutional due process claim against a state actor.

**J. Unauthorized Entry, Renovation Activity and Move-Out Harm**

73. While Plaintiff was still in possession and paying rent, Defendants allowed vendors or contractors to enter Plaintiff's unit or begin work associated with renovation or turnover.
74. Defendants later apologized and acknowledged that work occurred before Plaintiff's scheduled move-out date.
75. Plaintiff alleges that personal property was removed or disturbed without proper notice or consent.
76. This conduct further supports Plaintiff's claim that Defendants interfered with Plaintiff's quiet enjoyment and treated Plaintiff as though her housing rights had already ended before her lawful possession had ended.

**K. Plaintiff's Damages**

77. As a direct and proximate result of Defendants' conduct, Plaintiff lost the opportunity to lease or transfer to Unit 1402.
78. Plaintiff lost the opportunity to obtain a comparable three-bedroom unit at Somerset at the Crossings.
79. Plaintiff was forced into housing instability.
80. Plaintiff later relocated to substandard housing, including a rat-infested apartment.
81. Plaintiff and her daughter experienced displacement and disruption.
82. Plaintiff's daughter experienced educational instability.
83. Plaintiff incurred moving costs, storage costs, increased housing expenses, application costs, transportation costs, and other economic damages.
84. Plaintiff suffered emotional distress, humiliation, loss of housing stability, reputational harm, and loss of peace.
85. Plaintiff remains affected by Defendants' conduct.

**L. Evidence of Pretext and Shifting Explanations**

86. Defendants stated reasons for denying Plaintiff's transfer shifted over time and are contradicted by Defendants' own records.
87. Defendants claimed Plaintiff's transfer failed because onsite transfers were unavailable, Unit 1402 was unavailable, Plaintiff had not completed required steps, the unit had already been leased, and no three-bedroom units were available. Those explanations conflict with Defendants' own records showing that Plaintiff's transfer packet was created, a move-in statement was generated, Plaintiff paid the $400 transfer fee, and Unit 1402 was not pre-leased or reserved when Plaintiff requested it.
88. Defendants' transfer policy further states that payment of a transfer fee removes a unit from available status to leased status. Plaintiff paid that fee before her transfer

was cancelled. Defendants then approved Comparator Applicant A for Unit 1402 one day after Plaintiff's transfer was cancelled.

89. Defendants also later represented that no three-bedroom apartments were available, despite Plaintiff's time-stamped screenshots and Defendants' own leasing activity showing three-bedroom unit availability or activity during the relevant period. These shifting explanations, internal contradictions, and same-unit comparator facts support an inference that Defendants stated reasons were pretextual.

**M. Continuing Housing Harm, Dispossessory Record and Damages**

90. Defendants previously filed a dispossessory action against Plaintiff in December 2023. The action was dismissed.

91. Plaintiff later discovered that the dismissed filing continued to appear in housing-related records and impaired her ability to obtain safe and stable housing. In discovery, Plaintiff requested documents relating to the dispossessory filing, including internal approval records, notices, and service documentation.

92. Defendants represented that responsive eviction-related documents were produced, but Defendants have not identified documents showing a pre-filing demand for possession, proper notice, or completed service before the filing harmed Plaintiff's rental history.

93. Plaintiff does not plead the dispossessory filing as a standalone constitutional due process claim. Plaintiff pleads it as evidence of continuing housing harm, damages, and interference with Plaintiff's ability to secure future housing.

## V. CLAIMS FOR RELIEF

## COUNT I

**Fair Housing Act — Making Housing Unavailable**

**42 U.S.C. § 3604(a)**

1. Plaintiff incorporates all prior paragraphs.
2. Plaintiff is a Black woman and a member of a protected class.
3. Plaintiff sought to transfer to Unit 1402, a three-bedroom dwelling at Somerset at the Crossings.
4. Defendants generated transfer documents for Plaintiff, issued a move-in statement, and accepted Plaintiff's $400 transfer fee before cancelling the transfer and before approving Comparator Applicant A.
5. Defendants' own discovery responses admit Unit 1402 was not pre-leased or reserved when Plaintiff requested it.
6. Defendants cancelled Plaintiff's transfer on or about July 25, 2024.
7. Upon information and belief, Defendants approved Comparator Applicant A, who is of a different race and/or national origin than Plaintiff, for the same unit on or about July 26, 2024.
8. Defendants' conduct made Unit 1402 unavailable to Plaintiff because of race and/or national origin.
9. As a direct and proximate result, Plaintiff suffered damages including loss of housing opportunity, displacement, emotional distress, and economic loss.

## COUNT II

**Fair Housing Act — Discriminatory Terms, Conditions, Privileges, Services, or Facilities**

**42 U.S.C. § 3604(b)**

1. Plaintiff incorporates all prior paragraphs.
2. Defendants controlled the terms, conditions, privileges, services, and facilities connected to Plaintiff's rental housing, including transfer procedures, unit assignment, leasing communications, renewal options, pricing, and access to available units.
3. Defendants treated Plaintiff differently in the transfer process by cancelling her transfer after generating transfer documents and accepting a transfer fee, while permitting Comparator Applicant A to proceed with the same unit during the same timeline.
4. Defendants also told Plaintiff onsite transfers were unavailable while their own records reflect transfer activity occurring at the property during 2024.
5. Defendants' conduct denied Plaintiff equal terms, conditions, privileges, and services connected to rental housing because of race and/or national origin.
6. Plaintiff suffered damages as a result.

## COUNT III

**<u>Fair Housing Act — False Representation of Availability</u>**

**42 <u>U.S.C. § 3604(d)</u>**

1. Plaintiff incorporates all prior paragraphs.
2. Defendants represented that Unit 1402 and/or comparable three-bedroom units were unavailable to Plaintiff.
3. Defendants also represented that onsite transfers were unavailable.
4. On September 13, 2024, Defendants' attorney represented that there were no three-bedroom apartments available.
5. Those representations were false or materially misleading.

6. Defendants' own records show Unit 1402 was not pre-leased or reserved when Plaintiff requested it.
7. Defendants' own records also show that Comparator Applicant A was processed and approved for Unit 1402 during the same period.
8. Plaintiff also possessed time-stamped screenshots showing three-bedroom units available on Defendants' own website.
9. Defendants' false availability representations denied, discouraged, or interfered with Plaintiff's ability to obtain housing because of race and/or national origin.
10. Plaintiff suffered damages as a result.

## COUNT IV

**Fair Housing Act — Retaliation, Interference, Coercion, or Intimidation**

**42 U.S.C. § 3617**

1. Plaintiff incorporates all prior paragraphs.
2. Plaintiff exercised and attempted to exercise rights protected by the Fair Housing Act by seeking equal access to an available dwelling, questioning Defendants' transfer revocation, requesting equal treatment, and involving counsel to demand that Defendants honor the transfer or provide comparable housing.
3. Defendants interfered with Plaintiff's exercise and enjoyment of those rights by cancelling her transfer, giving shifting and false explanations, representing that onsite transfers and three-bedroom units were unavailable, imposing renewal pressure and market-rate consequences, and failing to correct housing records that impaired Plaintiff's access to future housing.
4. Defendants' conduct would deter a reasonable tenant from asserting fair housing rights.

5. Defendants' conduct constituted interference, coercion, intimidation, and retaliation under 42 U.S.C. § 3617.
6. Plaintiff suffered damages as a result.

## COUNT V

**Equal Property Rights Regardless of Race**

**42 U.S.C. § 1982**

1. Plaintiff incorporates all prior paragraphs.
2. Section 1982 protects Plaintiff's right to lease, hold, use, and enjoy property on equal terms regardless of race.
3. Plaintiff had the right to pursue and obtain rental housing opportunities on the same terms as similarly situated non-Black applicants or residents.
4. Defendants interfered with Plaintiff's equal property rights by denying her the opportunity to transfer to Unit 1402 while permitting Comparator Applicant A, of a different race and/or national origin, to proceed with the same unit during the same timeline.
5. Defendants' conduct deprived Plaintiff of equal rights to lease, hold, and enjoy rental property.
6. Plaintiff suffered damages as a result.

## VI. PUNITIVE DAMAGES

1. Plaintiff incorporates all prior paragraphs.
2. Defendants' conduct was willful, reckless, malicious, or showed conscious disregard for Plaintiff's federally protected housing rights.

3. Defendants had actual knowledge of Plaintiff's transfer request, transfer documents, fee payment, and need for the three-bedroom unit.
4. Defendants also had access to their own leasing records, transfer records, availability records, and applicant records.
5. Despite that knowledge, Defendants made or relied on materially inconsistent explanations, denied Plaintiff the unit, permitted another applicant to proceed, and later falsely represented that no three-bedroom units were available.
6. Punitive damages are warranted to punish and deter Defendants' conduct.

## VII. INJUNCTIVE AND DECLARATORY RELIEF

1. Plaintiff incorporates all prior paragraphs.
2. Plaintiff seeks injunctive relief requiring Defendants to correct, update, or assist in correcting housing records reflecting the dismissed dispossessory action.
3. Plaintiff seeks injunctive relief requiring Defendants to preserve and produce relevant leasing, transfer, application, approval, screening, and unit assignment records concerning Unit 1402.
4. Plaintiff seeks declaratory relief that Defendants violated Plaintiff's rights under the Fair Housing Act and 42 U.S.C. § 1982.

## VIII. PRAYER FOR RELIEF

**WHEREFORE, Plaintiff respectfully requests that this Court:**

a. Enter judgment in favor of Plaintiff and against Defendants.
b. Declare that Defendants violated Plaintiff's rights under the Fair Housing Act and 42 U.S.C. § 1982.

c. Award actual and compensatory damages, including economic loss, loss of housing opportunity, increased housing expenses, relocation expenses, application costs, storage costs, emotional distress, humiliation, reputational harm, and continuing housing-related damages.

d. Award punitive damages sufficient to punish and deter Defendants' willful, reckless, and discriminatory conduct.

e. Award taxable costs and attorney's fees as permitted by law, including under 42 U.S.C. § 3613(c)(2).

f. Grant injunctive relief requiring Defendants to correct, update, withdraw, or assist in correcting inaccurate housing-related records connected to the dismissed dispossessory filing.

g. Grant injunctive relief requiring Defendants to cease discriminatory, retaliatory, and misleading housing practices.

h. Award pre-judgment and post-judgment interest as permitted by law; and

i. Grant such other and further relief as this Court deems just and proper.

## IX. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

April 25, 2026

Juliette Lowe
Plaintiff, Pro Se
864-784-1055

JULIETTE LOWE
3104 E EMMA STREET
TAMPA, FL 33610

Clerk's Office
United States District Court
for the Northern District of Georgia
76 Ted Turner Drive, SW
RM. 2211
Atlanta, GA 30303

Align top of FedEx® shipping label here.

ORIGIN ID:KYOA (864) 784-1055
JULIETTE LOWE

3104 E EMMA ST

TAMPA, FL 33610
UNITED STATES US

SHIP DATE: 26APR26
ACTWGT: 0.10 LB
CAD: 6570866/ROSA2710

TO CLERKS OFFICE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GA
75 TED TURNER DRIVE, SW — RM 2211
ATLANTA GA 30303
(404) 215-1600 REF:
INV:
PO: DEPT:

FedEx Express

E

Envel

Recycl

WED — 29 APR 5:00P
** 2DAY **

TRK# 0201 8710 7353 7480

SP QFEA

30303
GA-US ATL

526-4582
SP-PO:100:Y ETP:1
75 TED TURNER DR SW
4314 WED 04/29 07:38

CLEARED DATE APR 2

Atlanta, GA 30303